# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

**FILED**

MAR 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

STEVEN MADEOY, *pro se*     :
& MELANIE MADEOY, *pro se*     :
1907 Piccard Drive     :
Rockville, MD 20850-6068     :
       Plaintiffs,     :
                    :
      v.     :
                    :
                    :
AMERICAN ARBITRATION     :
ASSOCIATION;     :
1776 Eye Street, NW, Suite 850     :
Washington DC 20006     :
SERVE: JEAN BAKER, DISTRICT     :
      VICE PRESIDENT     :
                    :
GREGORY BECKWITH,     :
as an arbitrator and in his individual     :
capacity;     :
10513 Judicial Drive, Suite 100     :
Fairfax VA 22030     :
                    :
ANDREW H. DIEM     :
as an arbitrator and in his individual     :
capacity;     :
5230 Loughboro Road, NW     :
Washington DC 20016     :
                    :
GEORGE C. MARTIN, JR.     :
PO Box 565     :
Garrett Park MD 20896     :
as an arbitrator and in his individual     :
capacity;     :
       Defendants     :

Case: 1:07-cv-00606
Assigned To : Leon, Richard J.
Assign. Date : 3/30/2007
Description: MADEOY V. AMERICAN ARBITRATION ASSOC.

JURY ACTION

## COMPLAINT AND MOTION TO VACATE, MODIFY, OR CORRECT AWARD BY THE AMERICAN ARBITRATION ASSOCIATION

COMES NOW Steven Madeoy and Melanie Madeoy ("Madeoys"), *pro se,*

pursuant to 9 U.S.C. §§ 10 & 12, and move this Court to vacate, modify, or

correct an award by the American Arbitration Association ("AAA").

In support whereof, the Madeoys rely on the following:

## I.    Background.

1.    On June 10, 2004 the Madeoys entered into an Abbreviated Form of Agreement Between Owner and Contractor (1987 Edition) ("Agreement") with ADC Builders, Inc. ("ADC") to provide contract administration for a single-family residence located at 10004 Sorrel Avenue, Potomac, MD 20852. *See, AIA Document A117* (Exhibit 1).

2.    Pursuant to the ¶ 15.8 of the Agreement, the parties agreed that:

> All claims of disputes arising out of or relating to the Contract Documents, or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties agree otherwise.

3.    Moreover, ¶ 19.1 of the Agreement provided that:

> Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the work.

4.    In the event, ADC filed a complaint with the AAA, the Madeoys filed a counterclaim, and an award was issued on January 6, 2007. *See, American Arbitration Association Award of Arbitrators* (Exhibit 2).[1]

## II.    Legal Authority.

9 U.S.C. § 12 states that:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court. For the purposes of the motion

---

[1] The individual affirmations of the three individual arbitrators are dated January 4, *2006;* but that is a typographical error, as evidenced by the covering transmittal letter from the AAA to the Madeoys' attorney and dated January 8, *2007.* (Exhibit 3).

any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

The date of the Award of Arbitrators was January 4, 2007.

## III. Argument.

9 U.S.C. § 10 provides, in pertinent part, as follows:

> "(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-

> (1) Where the award was procured by corruption, fraud, or undue means.

> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.

> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

In addition to the grounds under the Federal Arbitration Act ("FAA") on which an arbitration award may be vacated, an award may be vacated if it is in "manifest disregard of the law." *LaPrade v. Kidder, Peabody & Co.,* 246 F.3d 702, 706 (D.C. Cir. 2001) (internal quotation marks omitted); *cf. Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1486-88 (D.C. Cir. 1997).

As set out in *Kurke v. Oscar Gruss and Son, Inc.,* No. 05-7017 (D.C.Cir. 07/18/2006):

> to vacate an award under that standard, we "'must find that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether[,] and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.'" *LaPrade,* 246 F.3d at 706 (quoting *DiRussa v. Dean Witter Reynolds, Inc.,* 121 F.3d 818, 821 (2d Cir. 1997)).

In the instant action, the Madeoys assert that the AAA and its three panel members, acting in their capacity as arbitrators and as individuals, committed statutory violations by employing undue means, demonstrating evident partiality, and committing acts of misconduct by failing to enforce the explicit terms of the Contract between the parties that was the subject of the arbitration.

The Madeoys further assert that the award was in manifest disregard of established law governing contracts; the arbitrators (a) knew the principles of contract law, yet refused to apply them and (b) the law was well defined, explicit, and clearly applicable to the case before them.

## A.    The arbitrators failed to enforce the explicit terms of the Agreement.

There is little doubt that time was of the essence in the Contract between the parties. ADC was made aware, by express provisions in the Contract and by subsequent dealings with the Madeoys, that timely construction was an overriding feature of the agreement. Where time is of the essence the party not performing on time can be subjected to an action for damages resulting from the delay. *See Transport Mfg. & Equipment Co. v. Fruehauf Trailer Co.,* 295 F.2d 223, 234-235 (8 Cir. 1961); Williston on Contracts (3rd ed.) § 846; as expressed by 3A Corbin on Contracts § 713, (1951) in a discussion of "When is Time of the Essence." *General Insurance Co. v. Hercules Construction Co.,* 385 F.2d 13 (8th Cir. 1967).

If the nature of the contract makes timely performance essential, or if the contract expressly provides that time is of the essence, then failure to perform on time is a material breach. Arthur L. Corbin, 3 Corbin on Contracts, § 693 at 275 (1960). Here, the Madeoys demonstrated to the arbitrators that ADC

4

materially breached the Agreement by non-timely performance, but the panel ultimately ignored well-settled law and refused to apply it, all in "manifest disregard" for established and applicable legal principles.

### B.    The arbitrators arbitrarily and capriciously disregarded the voluminous expert testimony presented by the Madeoys.

The Madeoys provided the arbitrators with testimony by recognized experts in various fields to support their counterclaim and expended significant sums in that effort. ADC left this testimony largely uncontroverted by expert witness of its own, instead relying on the testimony of the very individuals whose work was suspect.

Notwithstanding the paucity of expert testimony on behalf of ADC, the panel failed to include any award for the expenses the Madeoys incurred; including, but not limited to, KCE Structural Engineers - $40,000, Home Advisors - $135,000, Navigant Consultants - $67,000, EBC Mechanical Engineers - $30,000, Washington and Nathan Yost, MD - $20,000.

The failure to award these expenses to the Madeoys as a result of their counterclaim can only be viewed as arbitrary and capricious. In this manner, the arbitrators used undue means to arrive at the amount that was awarded to the Madeoys and demonstrated evident partiality towards ADC, all in violation of 9 U.S.C. § 10.

An arbitration award will be held to be arbitrary and capricious unless "a ground for the arbitrator's decision can be inferred from the facts of the case." *Raiford v. Merrill Lynch, Pierce, Fenner & Smith,* 903 F.2d 1410, 1413 (11th Cir. 1990) (holding that the arbitrators' calculation of a damage award was not arbitrary and capricious because, although the arbitrators had not given any explanation of their award, "the arbitrators could have fashioned their award

based on any number of valid reasons." *Id. See, Scott v. Prudential Securities Inc.*, 141 F.3d 1007 (11th Cir. 1998). But in the case at bar, there were no valid reasons not to award the Madeoys the costs of their expert witnesses, whose testimony was substantively unrebutted. *See, also, Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210 (5th Cir. 1993) (adopting arbitrariness and capriciousness as a separate ground).

In addition, the arbitrators failed to award any portion of the $200,000 expense that the Madeoys incurred as legal fees.

### C.     The Madeoys have suffered compensatory and punitive damages as a direct result of the arbitrator's award.

The Madeoys were not correctly compensated for the expenses of their expert witnesses or their attorneys. These compensatory damages total, at minimum, $492,000. Moreover, the Madeoys have incurred punitive damages arising from the arbitrator's award in the amount of $1,500,000.

### D.     Jury Demand.

The Madeoys demand a jury trial in this matter.

### IV.     Conclusion.

WHEREFORE, for the foregoing reasons, the Madeoys respectfully request that their Motion to Vacate, Modify, or Correct Award by the American Arbitration Association be granted; that this Court order that the amount awarded to the Madeoys be corrected to $1,942,000; and that this Court grant to the Madeoys such other relief as it deems to be appropriate.

Respectfully submitted,

Steven Madeoy, *pro se*
1907 Piccard Drive
Rockville, MD 20850-6068
(301) 987-5717


Melanie Madeoy, *pro se*
1907 Piccard Drive
Rockville, MD 20850-6068
(301) 987-5717

7

**I (a) PLAINTIFFS**

_Steven Madeoy_
_Melanie Madeoy_

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

_Montgomery_

**DEFENDANTS**

_American Arbitration Assoc._
_District of Columbia_

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

_PRO SE - 1907 Piccard Dr._
_Rockville Md 20850_
_301-987-5717_

Case: 1:07-cv-00606
Assigned To: Leon, Richard J.
Assign. Date: 3/30/2007
Description: MADEOY V. AMERICAN ARBITRATION ASSOC.

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. General Civil (Other)** OR **☒ F. Pro Se General Civil**   _Contract_

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☒ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (If not administrative agency review or Privacy Act

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)  *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act)  *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (If not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
9 USC 10 ET SEQ
Motion to Vacate, Modify or Correct Award of American Arbitration Assoc

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $** 1,950,000   Check YES only if demanded in complaint **JURY DEMAND:** ☒ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES ☒ NO   If yes, please complete related case form.

DATE 3/30/07   SIGNATURE OF ATTORNEY OF RECORD

JTC

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

\forms\js-44.wpd

THE    AMERICAN    INSTITUTE    OF    ARCHITECT



**FILED**

MAR 3 0 2007

*AIA Document A117*

# Abbreviated Form of Agreement Between Owner and Contractor

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

*for*

*CONSTRUCTION PROJECTS OF LIMITED SCOPE*

*where the basis of payment is the*

*COST OF THE WORK PLUS A FEE*

*with or without a Guaranteed Maximum Price*

**1987 EDITION**

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION.*

This document includes abbreviated General Conditions and should not be used with other general conditions. It has been approved and endorsed by The Associated General Contractors of America.

**AGREEMENT**

made as of the **Two thousand four**                     day of     **June**                     in the year of

**BETWEEN** the Owner:
*(Name and address)*

**Steven and Melanie Madeoy**
**c/o Crosstown Properties**
**8511 Cedar Street**
**Silver Spring, MD 20910**

and the Contractor:
*(Name and address)*

**ADC Builders, Inc.**
**2701 Tower Oaks Blvd., Suite 200**
**Rockville, MD 20852**

The Project is:
*(Name and location)*

**Madeoy Residence**
**10004 Sorrel Avenue**
**Potomac, MD 20854**

The Architect is:
*(Name and address)*

**John F. Heltzel, AIA**
**9389 Forestwood Lane**
**Manassas, VA 20110**

EXHIBIT 2
_____
ALL-STATE® INTERNATIONAL

The Owner and Contractor agree as set forth below.

Copyright 1979, ©1987 by The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C. 20006. Portions of this document are derived from AIA Document A111, Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee, copyright ©1987 and earlier years, and AIA Document A201, General Conditions of the Contract for Construction, copyright ©1987 and earlier years. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will be subject to legal prosecution.

## ARTICLE 1
### THE WORK OF THIS CONTRACT

**1.1**  The Contractor shall execute the entire Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others, or as follows:

## ARTICLE 2
### RELATIONSHIP OF THE PARTIES

**2.1**  The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and utilize the Contractor's best skill, efforts and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to make best efforts to furnish at all times an adequate supply of workers and materials; and to perform the Work in the best way and most expeditious and economical manner consistent with the interests of the Owner. The Owner agrees to exercise best efforts to enable the Contractor to perform the Work in the best way and most expeditious manner by furnishing and approving in a timely way information required by the Contractor and making payments to the Contractor in accordance with the requirements of the Contract Documents.

## ARTICLE 3
### DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**3.1**  The date of commencement is the date from which the Contract Time of Paragraph 3.2 is measured, and shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.

*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*



**3.2**  The Contractor shall achieve Substantial Completion of the entire Work not later than

*(Insert the calendar date or number of calendar days after the date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Work, if not stated elsewhere in the Contract Documents.)*

**Twelve months from the date hereof, subject to conditions outside of the control of the Contractor**

, subject to adjustments of this Contract Time as provided in the Contract Documents.

*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*

## ARTICLE 4
### CONTRACT SUM          **and General Conditions**

**4.1**  The Owner shall pay the Contractor in current funds for the Contractor's performance of the Contract the Contract Sum consisting of the Cost of the Work as defined in Article 5 and the Contractor's Fee determined as follows:

*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee, and explain how the Contractor's Fee is to be adjusted for changes in the Work.)*

**[continued next page]**

AIA DOCUMENT A117 • ABBREVIATED COST-PLUS OWNER-CONTRACTOR AGREEMENT • SECOND EDITION • AIA®
© 1987 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

**A117-1987  2**



4.1.1   Based upon the Estimated Budget date June 1, 2004, attached hereto as Exhibit A, the Contractor's Fee shall be $117,000 payable monthly in the amount of $11,700 per month over a period of ten (10) months, beginning on the date hereof, subject to adjustment as set forth in Section 4.1.3, below.

4.1.2   The Contractor's General Conditions, based upon the Estimated Budget attached hereto as Exhibit A, shall be $90,000, payable monthly in the amount of $9,000 per month, over a period of ten (10) months, beginning on the date hereof, subject to adjustment as set forth in Section 4.1.3 below.

4.1.3   In the event that the cost of the work as defined in Article 5 shall exceed the total as set forth in the Estimated Budget (excluding Fee and General Conditions), then the Contractor's Fee and Contractor's General Conditions shall each be increased by ten percent (10%) of the excess of the Cost of the Work over the total Estimated Budget set forth in Exhibit A.

## ARTICLE 5
## COSTS TO BE REIMBURSED

5.1   The term "Cost of the Work" shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 5.

5.1.1   Wages of construction workers directly employed by the Contractor to perform the construction of the Work, including welfare, unemployment compensation, social security and other benefits.

5.1.2   Costs, including transportation, of materials and equipment incorporated or to be incorporated in the completed construction. All discounts for cash or prompt payment shall accrue to the Contractor.

5.1.3   Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts.

AIA DOCUMENT A117 • ABBREVIATED COST-PLUS OWNER-CONTRACTOR AGREEMENT • SECOND EDITION • AIA®
©1987 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

**A117-1987   3**

**5.1.4** Cost of all materials, temporary facilities, equipment and hand tools not customarily owned by the construction workers, which are provided by the Contractor at the site and fully consumed in the performance of the Work.

**5.1.5** Reasonable rental costs for necessary temporary facilities, machinery, equipment, and hand tools used at the site of the Work, whether rented from the Contractor or others. Rates and quantities of equipment rented shall be subject to the Owner's prior approval.

**5.1.6** That portion directly attributable to this Contract of premiums for insurance and bonds.

**5.1.7** Losses and expenses, not compensated by insurance or otherwise, sustained by the Contractor in connection with the Work, provided they have resulted from causes other than the fault or neglect of the Contractor.

**5.1.8** Costs of removal of debris from the site.

**5.1.9** Costs incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property.

**5.1.10** Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

*(Here insert modifications or limitations to any of the above subparagraphs.)*

## ARTICLE 6
## COSTS NOT TO BE REIMBURSED

**6.1**    The Cost of the Work shall not include:

**6.1.1** Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as may be provided in Article 26.

**6.1.2** Expenses of the Contractor's principal office and offices other than the site office.

**6.1.3** Overhead and general expenses, except as may be expressly included in Article 5,and  Article  4

**6.1.4** The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work.

**6.1.5** Rental costs of machinery and equipment, except as specifically provided in Subparagraph 5.1.5.

**6.1.6** Except as provided in Paragraph 10.2 of this Agreement, costs due to the fault or negligence of the Contractor, Subcontractors, anyone directly or indirectly employed by any of them, or for whose acts any of them may be liable, including, but not limited to, costs for the correction of damaged, defective or nonconforming Work, disposal and replacement of materials and equipment incorrectly ordered or supplied, and making good damage to property not forming part of the Work.

**6.1.7** Any cost not specifically and expressly described in Article 5.

**6.1.8** Costs which would cause the Guaranteed Maximum Price, if any, to be exceeded.

## ARTICLE 7
## DISCOUNTS, REBATES AND REFUNDS

**7.1**    Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included them in an Application for Payment and received payment therefor from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be secured.

AIA DOCUMENT A117 • ABBREVIATED COST-PLUS OWNER-CONTRACTOR AGREEMENT • SECOND EDITION • AIA®
©1987 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006          A117-1887    4.

**7.2**   Amounts which accrue to the Owner in accordance with the provisions of Paragraph 7.1 shall be credited to the Owner as a deduction from the Cost of the Work.

## ARTICLE 8
### ACCOUNTING RECORDS

**8.1**   The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract; the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants shall be afforded access to the Contractor's records relating to this Contract. The Contractor shall preserve these records for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 9
### PROGRESS PAYMENTS



Initial
Here

                                    Each
**9.1**   Based upon Applications for Payment submitted ~~to the Architect~~ by the Contractor ~~and Certificates for Payment issued by the Architect~~, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided in the Contract Documents. ~~The period covered by each~~ Application for Payment shall be ~~one calendar month ending on the last day of the month,~~ ~~as follows:~~ **paid within fifteen (15) days of submission**

**9.2**   Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

*(Insert any rate of interest agreed upon, if any.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

## ARTICLE 10
### FINAL PAYMENT

Initial
Here

**10.1**   Final payment, constituting the entire unpaid balance of the Contract Sum, shall be paid by the Owner to the Contractor when (1) the Contract has been fully performed by the Contractor except for the Contractor's responsibility to correct nonconforming Work and to satisfy other requirements, if any, which necessarily survive final payment, and (2) ~~a final Certificate for Payment has been issued by the Architect.~~ **A Use and Occupancy Certificate has been issued for the Project.**

**10.2**   If, subsequent to final payment and at the Owner's request, the Contractor incurs costs described in Article 5 and not excluded by Article 6 to correct defective or nonconforming Work, the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price, if any. If the Contractor has participated in savings as provided in Subparagraph 4.2.1, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Contractor.

## ARTICLE 11
### ENUMERATION OF CONTRACT DOCUMENTS

**11.1**   The Contract Documents are listed in Article 12 and, except for Modifications issued after execution of this Agreement, are enumerated as follows:

AIA DOCUMENT A117 • ABBREVIATED COST-PLUS OWNER-CONTRACTOR AGREEMENT • SECOND EDITION • AIA®
©1987 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

**11.1.1** The Agreement is this executed Abbreviated Form of Agreement Between Owner and Contractor, AIA Document A117, 1987 Edition.

**11.1.2** The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated _____, and are as follows:

| Document | Title | Pages |
|---|---|---|

See Section 11.1.4



**11.1.3** The Specifications are those contained in the Project Manual dated as in Subparagraph 11.1.2, and are as follows:

*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Pages |
|---|---|---|

See Section 11.1.4

---

## GENERAL CONDITIONS

---

### ARTICLE 12
### CONTRACT DOCUMENTS

**12.1** The Contract Documents consist of this Agreement with Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement. The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the intended results.

**12.2** The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor or (3) between any persons or entities other than the Owner and Contractor.

**12.3** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site and become familiar with the local conditions under which the Work is to be performed.

**12.4** The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

### ARTICLE 13
### OWNER

**13.1** The Owner shall furnish surveys and a legal description of the site.

**13.2** Except for permits and fees which are the responsibility of the Contractor under the Contract Documents, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for the construction, use or occupancy of permanent structures or permanent changes in existing facilities.

**13.3** If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents or persistently fails to carry out the Work in accordance with the Contract Documents, the Owner, by a written order, may order the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity.

### ARTICLE 14
### CONTRACTOR

**14.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless Contract Documents give other specific instructions concerning these matters.

**14.2** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for the proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

**14.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

**14.4** The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform with the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear under normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

**14.5** Unless otherwise provided in the Contract Documents, the Contractor shall pay sales, consumer, use, and other similar taxes which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect, and shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work.

**14.6** The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations, and lawful orders of public authorities bearing on performance of the Work. The Contractor shall promptly notify the Architect and Owner if the Drawings and Specifications are observed to be at variance therewith.

**14.7** The Contractor shall be responsible to the Owner for the acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons performing portions of the Work under a contract with the Contractor.

**14.8** The Contractor shall review, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable promptness. The Work shall be in accordance with approved submittals. When professional certification of performance criteria of materials, systems or equipment is required by the Contract Documents, the Architect shall be entitled to rely upon the accuracy and completeness of such certifications.

**14.9** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials.

**14.10** The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

**14.11** The Contractor shall pay all royalties and license fees; shall defend suits or claims for infringement of patent rights and shall hold the Owner harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents unless the Contractor has reason to believe that there is an infringement of patent.

**14.12** To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 14.12.

**14.12.1** In claims against any person or entity indemnified under this Paragraph 14.12 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this Paragraph 14.12 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

**14.12.2** The obligations of the Contractor under this Paragraph 14.12 shall not extend to the liability of the Architect, the Architect's consultants, and agents and employees of any of them arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, Construction Change Directives, designs or specifications, or (2) the giving of or the failure to give directions or instructions by the Architect, the Architect's consultants, and agents and employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

## ARTICLE 15
## ADMINISTRATION OF THE CONTRACT

**15.1** ~~The Architect will provide administration of the Contract and will be the Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the correction period described in Paragraph 23.1.~~

**15.2** The Architect will visit the site at intervals appropriate to the stage of construction to become generally familiar with the progress and quality of the completed Work and to determine in general if the Work is being performed in a manner indicating that the Work, when completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check quality or quantity of the Work. On the basis of on-site observations as an architect, the Architect will keep the Owner informed of progress of the Work and will endeavor to guard the Owner against defects and deficiencies in the Work.

**15.3** The Architect will not have control over or charge of and will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility as provided in Paragraphs 14.1 and 21.1. The Architect will not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents.

**15.4** Based on the Architect's observations and evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**15.5** The Architect will interpret and decide matters concerning performance under and requirements of the Contract Documents on written request of either the Owner or Contractor. The Architect will make initial decisions on all claims, disputes or other matters in question between the Owner and Contractor, but will not be liable for results of any interpretations or decisions rendered in good faith. The Architect's decisions in matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents. All other decisions of the Architect, except those which have been waived by making or acceptance of final payment, shall be subject to arbitration upon the written demand of either party.

**15.6** The Architect will have authority to reject Work which does not conform to the Contract Documents.

**15.7** The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information ~~given and the design concept expressed in the Contract Documents.~~

**15.8** All claims or disputes between the Contractor and the Owner arising out of or relating to the Contract Documents, or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise ~~and subject to an initial presentation of the claim or dispute to the Architect as required under Paragraph 15.5.~~ Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. The

*Initial Here*

*Initial Here*

AIA DOCUMENT A117 • ABBREVIATED COST-PLUS OWNER-CONTRACTOR AGREEMENT • SECOND EDITION • AIA®
©1987 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Contract Documents shall include, by consolidation, joinder or in any other manner, any person or entity not a party to the Agreement under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect or any of the Architect's employees or consultants. The agreement herein among the parties to the Agreement and any other written agreement to arbitrate referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

## ARTICLE 16
### SUBCONTRACTS

**16.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site.

**16.2** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of the Subcontractors for each of the principal portions of the Work. The Contractor shall not contract with any Subcontractor to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection. Contracts between the Contractor and Subcontractors shall (1) require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by the terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities which the Contractor, by the Contract Documents, assumes toward the Owner and Architect, and (2) allow to the Subcontractor the benefit of all rights, remedies and redress afforded to the Contractor by these Contract Documents.

## ARTICLE 17
### CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

**17.1** The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under conditions of the contract identical or substantially similar to these, including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such claim as provided elsewhere in the Contract Documents.

**17.2** The Contractor shall afford the Owner and separate contractors reasonable opportunity for the introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's

construction and operations with theirs as required by the Contract Documents.

**17.3** Costs caused by delays, improperly timed activities or defective construction shall be borne by the party responsible therefor.

## ARTICLE 18
### CHANGES IN THE WORK

**18.1** The Owner, without invalidating the Contract, may order changes in the Work consisting of additions, deletions or modifications, the Guaranteed Maximum Cost, if any, and the Contract Time being adjusted accordingly. Such changes in the Work shall be authorized by written Change Order signed by the Owner, Contractor and Architect, or by written Construction Change Directive signed by the Owner and Architect.

**18.2** The Contract Sum and Contract Time shall be changed only by Change Order.

**18.3** The cost or credit to the Owner from a change in the Work shall be determined by mutual agreement.

## ARTICLE 19
### TIME

**19.1** Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

**19.2** The date of Substantial Completion is the date certified by the Architect in accordance with Paragraph 20.3.

**19.3** If the Contractor is delayed at any time in progress of the Work by changes ordered in the Work, by labor disputes, fire, unusual delay in deliveries, abnormal adverse weather conditions not reasonably anticipatable, unavoidable casualties or any causes beyond the Contractor's control, or by other causes which the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

## ARTICLE 20
### PAYMENTS AND COMPLETION

**20.1** Payments shall be made as provided in Articles 9 and 10 of this Agreement.

**20.2** Payments may be withheld on account of (1) defective Work not remedied, (2) claims filed by third parties, (3) failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment, (4) reasonable evidence that the Work cannot be completed for the unpaid balance of the Guaranteed Maximum Price, if any, (5) damage to the Owner or another contractor, (6) reasonable evidence that the Work will not be completed within the Contract Time and that the unpaid balance of the Guaranteed Maximum Price, if any, would not be adequate to cover actual or liquidated damages for the anticipated delay, or (7) persistent failure to carry out the Work in accordance with the Contract Documents.

**20.3** ~~When the Architect agrees that the Work is substantially complete, the Architect will issue a Certificate of Substantial Completion.~~

AIA DOCUMENT A117 • ABBREVIATED COST-PLUS OWNER-CONTRACTOR AGREEMENT • SECOND EDITION • AIA®
©1987 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

**A117-1987    10**

20.4  Final payment shall not become due until the Contractor has delivered to the Owner a complete release of all liens arising out of this Contract or receipts in full covering all labor, materials and equipment for which a lien could be filed, or a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

20.5  The making of final payment shall constitute a waiver of claims by the Owner except those arising from:

.1  liens, claims, security interests or encumbrances arising out of the Contract and unsettled;

.2  failure of the Work to comply with the requirements of the Contract Documents; or

.3  terms of special warranties required by the Contract Documents.

Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 21
## PROTECTION OF PERSONS AND PROPERTY

21.1  The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Contract. The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

.1  employees on the Work and other persons who may be affected thereby;

.2  the Work and materials and equipment to be incorporated therein; and

.3  other property at the site or adjacent thereto.

The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons and property and their protection from damage, injury or loss. The Contractor shall promptly remedy damage and loss to property at the site caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Subparagraphs 21.1.2 and 21.1.3, except for damage or loss attributable to acts or omissions of the Owner or Architect or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Paragraph 14.12.

21.2  The Contractor shall not be required to perform without consent any Work relating to asbestos or polychlorinated biphenyl (PCB).

## ARTICLE 22
## INSURANCE

22.1  The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located insurance for protection from claims under workers' or workmen's compensation acts and other employee benefit acts which are applicable, claims for damages because of bodily injury, including death, and from claims for damages, other than to the Work itself, to property which may arise out of or result from the Contractor's operations under the Contract, whether such operations be by the Contractor or by a Subcontractor or anyone directly or indirectly employed by any of them. This insurance shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater, and shall include contractual liability insurance applicable to the Contractor's obligations under Paragraph 14.12. Certificates of such insurance shall be filed with the Owner prior to the commencement of the Work.

22.2  The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance. Optionally, the Owner may purchase and maintain other insurance for self-protection against claims which may arise from operations under the Contract. The Contractor shall not be responsible for purchasing and maintaining this optional Owner's liability insurance unless specifically required by the Contract Documents.

22.3  Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall be on an all-risk policy form and shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief.

22.4  A loss insured under Owner's property insurance shall be adjusted with the Owner and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to the requirements of any applicable mortgagee clause.

22.5  The Owner shall file a copy of each policy with the Contractor before an exposure to loss may occur. Each policy shall contain a provision that the policy will not be cancelled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor.

22.6  The Owner and Contractor waive all rights against each other and the Architect, Architect's consultants, separate contractors described in Article 17, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Article 22 or other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the Owner as fiduciary. The Contractor shall require similar waivers in favor of the Owner and the Contractor by Subcontractors and Sub-subcontractors. The Owner shall require similar waivers in favor of the Owner and Contractor by the Architect, Architect's consultants, separate contractors described in Article 17, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them.

## ARTICLE 23
## CORRECTION OF WORK

23.1  The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the

AIA DOCUMENT A117 • ABBREVIATED COST-PLUS OWNER-CONTRACTOR AGREEMENT • SECOND EDITION • AIA®
©1987 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

Contract Documents, whether observed before or after Substantial Completion and whether or not fabricated, installed or completed, and shall correct any Work found to be not in accordance with the requirements of the Contract Documents within a period of one year from the date of Substantial Completion of the Contract or by terms of an applicable special warranty required by the Contract Documents. The provisions of this Article 23 apply to Work done by Subcontractors as well as to Work done by direct employees of the Contractor.

**23.2** Nothing contained in this Article 23 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the time period of one year as described in Paragraph 23.1 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

## ARTICLE 24
### MISCELLANEOUS PROVISIONS

**24.1** The Contract shall be governed by the law of the place where the Project is located.

**24.2** As between the Owner and the Contractor, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued:

   .1  not later than the date of Substantial Completion for acts or failures to act occurring prior to the relevant date of Substantial Completion;

   .2  not later than the date of issuance of the final Certificate for Payment for acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment; and

   .3  not later than the date of the relevant act or failure to

act by the Contractor for acts or failures to act occurring after the date of the final Certificate for Payment.

## ARTICLE 25
### TERMINATION OF THE CONTRACT

**25.1** ~~If the Architect fails to recommend payment for a period of 30 days through no fault of the Contractor, or~~ if the Owner fails to make payment thereon for a period of 30 days, the Contractor may, upon seven additional days' written notice to the Owner ~~and the Architect~~, terminate the Contract and recover from the Owner payment for all Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages applicable to the Project, provided that in no event shall such payment cause the Guaranteed Maximum Price to be exceeded.

**25.2** If the Contractor defaults or persistently fails or neglects to carry out the Work in accordance with the Contract Documents or fails to perform a provision of the Contract, the Owner, after seven days' written notice to the Contractor and without prejudice to any other remedy the Owner may have, may make good such deficiencies and may deduct the cost thereof, including compensation for the Architect's services and expenses made necessary thereby, from the payment then or thereafter due the Contractor. Alternatively, at the Owner's option, and upon certification by the Architect that sufficient cause exists to justify such action, the Owner may terminate the Contract and take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor and may finish the Work by whatever method the Owner may deem expedient. If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, such excess shall be paid to the Contractor, but if such costs exceed such unpaid balance, the Contractor shall pay the difference to the Owner, provided that in no event shall such payment cause the Guaranteed Maximum Price, if any, to be exceeded.

## ARTICLE 26
### OTHER CONDITIONS OR PROVISIONS

This Agreement entered into as of the day and year first written above.

OWNER

(Signature)  Steven Nadeoy

(Printed name and title)  Melissa Nadeoy

CONTRACTOR  ADC Builders, Inc.

By:

(Signature)  6-9-04

Alan D. Cohen, President

(Printed name and title)

AIA DOCUMENT A117 • ABBREVIATED COST-PLUS OWNER-CONTRACTOR AGREEMENT • SECOND EDITION • AIA®
©1987 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006.

EXHIBIT A

## Madeoy House Estimate
### June 1, 2004

| Category | Amount |
| --- | --- |
| Access Roads & Maintenance | 2,500 |
| Appliances | 30,000 |
| Backfill & Grade | 5,500 |
| Burglar Alarm | 2,500 |
| Cabinets-Kitchen | 37,500 |
| Caulking | 1,500 |
| Ceramic Labor | 16,000 |
| Ceramic Material | 20,000 |
| Cleanup - Dumpsters | 6,500 |
| Columns - Prefab | 2,500 |
| Concrete | 60,000 |
| Cornice - Labor | 6,500 |
| Demo | 35,000 |
| Dig Basement | 4,500 |
| Drawings | 1,500 |
| Driveways | 12,000 |
| Drywall | 26,000 |
| EIFS | 46,000 |
| Electrical | 38,000 |
| Electrical Pepco | 950 |
| Excavation - Rough | 4,500 |
| Exterior - Doors & Windows | 65,000 |
| Final Cleaning | 3,500 |

# Madeoy House Estimate
## June 1, 2004

| Category | Amount |
|---|---|
| Fireplace - Prefabs (2) | 5,000 |
| Flooring - Carpet | 12,000 |
| Flooring - Hardwood | 30,000 |
| Framing Labor | 120,000 |
| Framing Materials | 60,000 |
| Garage Doors (3) | 5,500 |
| Granite & Vanity Tops | 12,000 |
| Hardware (Doors) | 4,500 |
| HVAC | 36,000 |
| Insulation | 5,500 |
| Insurance - Builders Risk | 8,000 |
| Interior - Doors & Frames | 13,000 |
| Interior - Trim Labor | 12,000 |
| Interior - Trim Material | 10,200 |
| Masonry - Arch. Stone | 58,000 |
| Mirrors | 2,500 |
| Miscellaneous | 2,500 |
| Painting | 50,000 |
| Permits/WSSC | 12,000 |
| Plumbing - Fixtures | 35,000 |
| Plumbing - Sub | 35,000 |
| Pepco Fees | 900 |
| Roof/Gutters | 40,000 |

## Madeoy House Estimate
## June 1, 2004

| Category | Amount |
| --- | --- |
| Sauna | 3,500 |
| Sediment Control | 3,500 |
| Sediment Control Maintenance | 2,500 |
| Stairs & Railings Wood | 15,000 |
| Stakeout | 3,500 |
| Steel – Ornamental | 12,000 |
| Steel – Structural | 7,000 |
| Survey | 1,500 |
| Temporary Fence | 4,500 |
| Vanity Cabinets | 30,000 |
| Wall Check Survey | 750 |
| Water & Sewer Taps | 3,500 |
| Waterproofing | 10,000 |
| Window Wells | 1,500 |
| Total | 1,096,300 |
| General Conditions | 90,000 |
| Fee | 117,000 |
| Total | 1,303,300 |

EXHIBIT B

1.   Architectural Drawings by John F. Heltzel, AIA, each dated October 20, 2003

     CS      COVER SHEET, REVISED 11/10/03
     A1      BASEMENT/FOUNDATION PLAN, REVISED 1/6/04
     A2      FIRST FLOOR PLAN
     A3      SECOND FLOOR PLAN
     A4      FRONT ELEVATION
     A5      RIGHT ELEVATION
     A6      REAR ELEVATION
     A7      LEFT ELEVATION
     A8      SECTION A-A, REVISED 1/6/04
     A9      SECTION B-B
     A10     SECTION C-C, SECTION D-D, CODE NOTES
     A11     SECTION E-E, DETAILS, REVISED 1/6/04
     A12     FIRST FLOOR FRAMING PLAN
     A13     SECOOND FLOOR FRAMING PLAN, REVISED 1/6/04
     A14     ROOF FRAMING PLAN, REVISED 1/6/04

2.   Civil/Engineering Drawings by CAS Engineering
     Average Front Setback Survey dated 4/2003 (1 page)
     Building Permit Site Plan dated 5/2003 (1 page)

3.   Prescriptive Package Worksheet, Permit #324055 certified by John F. Heltzel dated 10/230/03

## AMERICAN ARBITRATION ASSOCIATION
### Construction Arbitration Tribunal

In the Matter of the Arbitration between:

ADC BUILDERS, INC.

   Claimant

v.

STEVEN & MELANIE MADEOY

   Respondents

Case No.: 16 110 Y 00629 05

FILED

MAR 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### AWARD OF ARBITRATORS

WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the Arbitration Agreement as contained in the Abbreviated Form of Agreement between Owner and Contractor (AIA document A117 as modified) as entered into between the above-named parties dated June 5, 2004, and having been duly sworn, and having duly heard the proofs and allegations of the parties, AWARD as follows:

### BACKGROUND

Steven and Melanie Madeoy ("Madeoys" or "Owners") entered into an Abbreviated Form of Agreement between Owner and Contractor (AIA document A117 as modified) with ADC Builders, Inc. to provide contract administration for a single-family residence located at 10000 Sorrel Avenue, Potomac, Maryland. ADC Builders, Inc., in pursuit of said action seeks in its claim (exclusive of attorney's fees, interest and costs) unpaid invoices issued to the Madeoys, budget overage on requisition number 16 less agreed upon credits and adjustments. ADC Builders, Inc., in its claim seeks damages as calculated below:

### ADC's Claim

**1. ADC Requisitions and Invoices Issued to Madeoys But Not Paid:**

| Requisition/Invoice | Amounts Claimed |
|---|---|
| Requisition #12 | $75,047.00 |
| Requisition #13 | $22,091.00 |
| Requisition #14 | $31,137.00 |
| Requisition #15 | $56,117.00 |
| Requisition #16 | $10,439.00 |
| Invoice #16 | $ 627.00 |
| Invoice #17 | $ 110.00 |
| Invoice #18 | $ 573.00 |
| Invoice #19 | $21,275.00 |
| **Total Amounts Claimed:** | **$228,776.00** |

**2. Overage on Budget – Per Last Requisition Issued by ADC to the Madeoys**

1

Mar 27 07 09:03a Rose Cook Land Company 303 307 5711 p.2
JAN-10 Case 1:07-cv-00606-EGS Document 1-4 Filed 03/30/2007 3310343 Page 2 of 6 P. 04

JAN. 8. 2007 5:40PM AMERICAN ARBITRATION NO. 2410 P. 5/9

| | |
|---|---|
| Generator | $36,372.71 |
| Electrical / Plumbing | $80,271.73 |
| Garage Slab | $11,273.07 |
| Delay Damages | $331,869.00 |
| Home Advisors | $111,622.21 |
| Cost to Complete | $787,769.00 |
| **Total Damages Claimed** | **$2,253,570.07** |

After careful consideration of the testimony of the witnesses who appeared before the panel and an exhaustive review of the exhibits introduced into evidence the arbitrators hereby AWARD ADC Builders, Inc., the following sums:

## 1. ADC Requisitions and Invoices Issued to Madeoys But Not Paid:

| Requisition/Invoice | Amounts Awarded |
|---|---|
| Requisition #12 | $75,047.00 |
| Requisition #13 | $33,091.00 |
| Requisition #14 | $51,157.00 |
| Requisition #15 | $56,117.00 |
| Requisition #16 | $10,439.00 |
| Invoice #16 | $ 627.00 |
| Invoice #17 | $ 110.00 |
| Invoice #18 | $ 573.00 |
| Invoice #19 | $21,275.00 |
| Total Amounts Awarded: | $228,776.00 |

## 2. Overage on Budget -- Per Last Requisition Issued by ADC to the Madeoys

(Requisition #16): (10% Budget Overage per Article 4.1.3 of the Contract)

Total Amount Due Per Contract ($244,205.00 total overage X 10%):     $24,421.00

## 3. Summary of Balance Due Claimant ADC Builders, Inc.:

| | |
|---|---|
| Requisitions and Invoices: | $228,776.00 |
| 10% Budget Overage billed in Req. No. 16: | $ 24,421.00 |
| Subtotal: | $253,197.00 |

Less Credit/Adjustment

| | | |
|---|---|---|
| a. | Star Concrete Inv. No. 7216 (Billed in Req. Nos. 2 & 3) | ($750.00) |
| b. | Star Concrete Inv. No. 8283 (Billed in Req. Nos. 5 & 11) | ($4,030.00) |
| c. | Potomac Design charge (Billed in Invoice #19) | ($21,275.00) |
| d. | Charge for cedar corbels (Billed in Req. No. 15) | ($925.00) |
| e. | Star Concrete Inv #9913 (Billed in Req. Nos. 9 & 12) | ($600.00) |
| f. | Bosch Drill bits | ($27.00) |

3

(Billed in Req. No. 1)

i. Adjustment due on 10% Overage Amount
   (Concrete overage no. $4,111 not $9,491
   after Star Concrete credits above)                    ($538.00)
j. Adjustment due on 10% Overage Amount
   (Miscellaneous overage now $2,942 not
   $3,594.00 after credit for order correction line)     ($65.00)
k. Total credit adjustment amount                        ($78,240.00)

**Total Amount Awarded to Claimant, ADC Builders, Inc.:**     **$224,957.00**

The arbitrators further AWARD the Madeoys the following sums upon their counterclaim:

| Category of Damages Alleged | Amounts Awarded |
|---|---|
| Foundation Drainage | $38,616.00 |
| Other Structural | $ 8,730.00 |
| Garage Foundation | $22,290.00 |
| Windows and Doors | $24,600.00 |
| EIFS | $ 4,600.00 |
| Mold | $33,410.50 |
| Pool | $14,360.00 |
| Mechanical | $20,950.00 |
| Stone Veneer | $ 0.00 |
| Generator | $ 0.00 |
| Electrical / Plumbing (electrical $6,100; plumbing $8,480) | $14,580.00 |
| Games Slab | $22,470.00 |
| Delay Damages | $ 0.00 |
| Home Advisors | $ 0.00 |
| Cost to Complete | $ 0.00 |

**Total Damages Awarded Respondents,**
**Steven and Melanie Madeoy**                            **$204,812.50**

## SUMMARY

The Respondents shall pay to the Claimant the sum of TWENTY THOUSAND THREE HUNDRED
FORTY-FOUR DOLLARS and FIFTY CENTS ($20,344.50), plus prejudgment interest of NINE
HUNDRED FIFTEEN DOLLARS and FIFTY CENTS ($915.50) through December 31, 2006 for a total
of TWENTY-ONE THOUSAND TWO HUNDRED SIXTY DOLLARS and NO CENTS ($21,260.00).
Post judgment interest at the rate of six percent (6%) shall accrue thereafter until payment or entry of
judgment upon the Award.

The administrative fees and expenses of the American Arbitration Association totaling SIXTEEN
THOUSAND SEVEN HUNDRED FIFTY DOLLARS AND NO CENTS ($16,750.00)
shall be borne as incurred. The Arbitrators' compensation and expenses totaling FIFTY-EIGHT
THOUSAND ONE HUNDRED FORTY-TWO DOLLARS AND EIGHTY-EIGHT CENTS ($58,142.88)
shall be borne equally by the parties.

Each party shall bear its own attorney's fees and costs.

This Award is in settlement of all claims and counterclaims submitted to this Arbitration. All claims not
expressly granted herein are hereby denied.

4

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

_Jan 4_ 2006
Date

_Gregory Beckwith, Esquire_

_____ 2006
Date

Andrew H. Dixn, Esquire

_____ 2006
Date

George C. Martin, Jr., Esquire


I, Gregory Beckwith, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_Jan 4_ 2006
Date

_Gregory Beckwith, Esquire_

I, Andrew H. Dixn, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____ 2006
Date

Andrew H. Dixn, Esquire

I, George C. Martin, Jr., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____ 2006
Date

George C. Martin, Jr., Esquire

5

Jan 18 07 01:29p    Rose Cook Land Company    30-7-987-5711    p.9
JAN-10-2007 WED 01:22 PM F    LANDER MISLER    FHA NO. 20    0543    Page 5 of 6

JAN. 8. 2007: 5:40PM 8236 AMERICAN ARBITRATION    NO. 2410    P. 8/9

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

_____2006
Date

_____2006
Date

_____2006
Date

Gregory _____ Esquire

Andrew H. Diem, Esquire

George C. Martin, Jr., Esquire

I, Gregory Beckwith, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____2006
Date

Gregory Beckwith, Esquire

I, Andrew H. Diem, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____2006
Date

Andrew H. Diem, Esquire

I, George C. Martin, Jr., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____2006
Date

George C. Martin, Jr., Esquire

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

_Jan 7_ , 2006
Date

_____ , 2006
Date

_____ , 2006
Date

_____
Gregory Beckwith, Esquire

_____
Andrew H. Dixon, Esquire

_____
George C. Martin, Jr., Esquire

I, Gregory Beckwith, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_Jan 4_ , 2006
Date

_____
Gregory Beckwith, Esquire

I, Andrew H. Dixon, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____ , 2006
Date

_____
Andrew H. Dixon, Esquire

I, George C. Martin, Jr., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____ , 2006
Date

_____
George C. Martin, Jr., Esquire

5



American Arbitration Association
*Dispute Resolution Services Worldwide*

Southeast Case Management Center
Cimnbery D. Davis
**Vice President**

January 8, 2007

2200 Century Parkway, Suite 300, Atlanta, GA 30345
telephone: 404-325-0101 facsimile: ~~~
internet: http://www.~~~

**FILED**

**MAR 30** 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**VIA FACSIMILE**

Gerald I. Katz, Esq.
Katz & Stone, L.L.P.
8230 Leesburg Pike, Suite 600
Vienna, VA 22182

Robert Greenberg
Friedlander, Misler, Friedlander, Sloan & Harz
1101-17th Street, NW
Suite 700
Washington, DC 20036

Re: 16 110 Y 00629 05
ADC Builders, Inc.
and
Steven Madeoy and Melanie Madeoy

Dear Parties,

By direction of the Arbitrator we herewith transmit to you the duly executed Award in the above matter. This serves as a reminder that there is to be no direct communication with the Arbitrator. All communication shall be directed to the Association.

At this time we have verified with the arbitrators that they have submitted all requests for compensation and expenses in this matter. Accordingly, we have conducted a final reconciliation of the finances. If a party has any unused compensation deposits, we have issued a refund check that should arrive in the mail shortly. If a party has an outstanding balance, that party will continue to receive cyclical invoices until the balance is paid.

Note that the financial reconciliation reflects costs as they were incurred during the course of the proceeding. Any apportionment of these costs by the arbitrator, pursuant to the Rules, will be addressed in the award and will be stated as one party's obligation to reimburse the other party for costs incurred. Any outstanding balances the parties may have with the AAA for the costs incurred during the arbitration proceedings remain due and payable to the AAA even after the final award is issued, and regardless of the arbitrator's apportionment of these costs between the parties in the award.

We appreciate your selection of the AAA as your alternative dispute resolution provider in this matter. As always, please do not hesitate to contact me if you have any questions.

Sincerely,

/s/Allyson Bloom

Allyson Bloom
LCC Case Manager
404 325 0101
BloomA@adr.org

*Supervisor Information: Amy Henthorn Jones, 800 218 5286, Henthorna@adr.org*

Encl.