## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STEVEN MADEOY and <br> MELANIE MADEOY, <br>                 Plaintiffs, <br><br>       v. <br><br> AMERICAN ARBITRATION ASSOCIA- <br> TION, et al., <br>                 Defendants. | Civil Action No. 1:07-cv-00606-RJL |

### THE AAA DEFENDANTS' MOTION TO DISMISS

For the reasons set forth in the accompanying Statement of Points and Authorities, Defendants American Arbitration Association ("AAA"), Gregory Beckwith, Andrew H. Diem, and George C. Martin, Jr. (collectively, the "AAA Defendants"), respectfully move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of all claims asserted against them in this lawsuit.

Respectfully submitted,

Dated:  June 22, 2007

/s/ Mark A. Perry
MARK A. PERRY (DC Bar # 438203)
MPerry@gibsondunn.com
JASON J. MENDRO (DC Bar # 482040)
JMendro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for the AAA Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEVEN MADEOY and<br>MELANIE MADEOY,<br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>AMERICAN ARBITRATION ASSOCIA-<br>TION, et al.,<br>　　　　　　Defendants. | Civil Action No. 1:07-cv-00606-RJL |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF**
**THE AAA DEFENDANTS' MOTION TO DISMISS**

Dated:  June 22, 2007

MARK A. PERRY (DC Bar # 438203)
MPerry@gibsondunn.com
JASON J. MENDRO (DC Bar # 482040)
JMendro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for the AAA Defendants*

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................1

II.    ALLEGATIONS OF THE COMPLAINT........................................................2

III.   ARGUMENT ............................................................................................4

       A.    The Federal Arbitration Act Provides No Cause Of Action Against The
             AAA Defendants...........................................................................4

       B.    The AAA Defendants Are Absolutely Immune From Suit ....................6

       C.    The Madeoys' Claims Against The AAA Defendants Are Contractually
             Barred.......................................................................................11

IV.    CONCLUSION........................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882 (2d Cir. 1990)........................ 6, 7, 8, 9

*Bradley v. Fisher*, 80 U.S. 335 (1872) ........................................................................................ 7

*Bryson v. Gere*, 268 F. Supp. 2d 46 (D.D.C. 2003) ................................................................. 13

*C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411 (2001) ...... 11

\* *Caudle v. Am. Arbitration Ass'n*, 230 F.3d 920 (7th Cir. 2000) ................................................ 5, 6

*Cole v. Burns Int'l. Sec. Servs.*, 105 F.3d 1465 (D.C. Cir. 1997) ................................................ 12

\* *Corey v. New York Stock Exch.*, 691 F.2d 1205 (6th Cir. 1982)...................................... 5, 6, 7, 10

*Davis v. Chevy Chase Fin. Ltd.*, 667 F.2d 160 (D.C. Cir. 1981) ................................................ 14

*First Options v. Kaplan*, 514 U.S. 938 (1995) ............................................................................ 10

*Foster v. Turley*, 808 F.2d 38 (10th Cir. 1986) ............................................................................ 5

*Galuska v. New York Stock Exch.*, No. 99-3522, 2000 U.S. App. LEXIS 6370 (7th Cir. Apr. 3,
  2000) ........................................................................................................................................ 7

*Hamilton & Spiegel, Inc. v. Bd. of Educ. of Montgomery County*, 195 A.2d 710 (Md. 1963)..... 13

*Hawkins v. Nat'l Ass'n of Sec. Dealers*, 149 F.3d 330 (5th Cir. 1998) ......................................... 7

*Honn v. Nat'l Ass'n of Sec. Dealers*, 182 F.3d 1014 (8th Cir. 1999) ........................................... 7

*Int'l Med. Group, Inc. v. Am. Arbitration Ass'n*, 149 F. Supp. 2d 615 (S.D. Ind. 2001), *aff'd*, 312
  F.3d 833 (7th Cir. 2002) ......................................................................................................... 12

*Int'l Med. Group, Inc. v. Am. Arbitration Ass'n*, 312 F.3d 833 (7th Cir. 2002) ........................ 5, 6

*Marlboro Shirt Co. v. Am. Dist. Tel. Co.*, 77 A.2d 776 (Md. 1951) ............................................ 13

*Nat'l Football League Players Ass'n v. Office and Prof'l Employees Int'l Union*, 947 F. Supp.
  540 (D.D.C. 1996), *aff'd*, Nos. 96-7245, 96-7268, 1997 WL 362761 (D.C. Cir. May 6, 1997)
  ................................................................................................................................................. 11

\* *New England Cleaning Servs, Inc. v. Am. Arbitration Ass'n*, 199 F.3d 542 (1st Cir. 1999)...... 6, 7

*Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381 (8th Cir. 1996)............................................ 6, 7

*Owens-Ill., Inc. v. Cook*, 872 A.2d 969 (Md. 2005) .................................................. 13

*Peters Sportswear Co. v. Am. Arbitration Ass'n*, 233 A.2d 558 (Pa. 1967).................................. 15

*Richardson v. Am. Arbitration Ass'n*, 888 F. Supp. 604 (S.D.N.Y. 1995) ............................ 14-15

*Seligman v. Allstate Ins. Co.*, 756 N.Y.S.2d 403 (N.Y. Sup. Ct. 2003)........................................ 15

*Shrader v. Nat'l Ass'n of Sec. Dealers*, 855 F. Supp. 122 (E.D.N.C. 1994), *aff'd per curiam*, 54 F.3d 774 (4th Cir. 1995) ...................................................................................... 7

*Spates v. Spates*, 296 A.2d 581 (Md. 1972).................................................................. 13

*Tamari v. Conrad*, 552 F.2d 778 (7th Cir. 1977)....................................................... 6, 14

*United States ex. rel. Tenn. Valley Marble Holding Co. v. Grunley Constr.*, 433 F. Supp. 2d 104 (D.D.C. 2006) ...................................................................................... 12

*Volt Info. Sci., Inc. v. Bd. of Trs.*, 489 U.S. 468 (1989) ................................................. 11

* *Wagshal v. Foster*, 28 F.3d 1249 (D.C. Cir. 1994)........................................................ 8, 9

*Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579 (9th Cir. 1987)................................................ 6

*Wells v. Chevy Chase Bank, F.S.B.*, 832 A.2d 812 (Md. 2003)........................................ 12

*Wiggins v. Hitchens*, 853 F. Supp. 505 (D.D.C. 1994) ................................................. 14

**Statutes**

9 U.S.C. § 10.................................................................................................. 4

9 U.S.C. § 12.................................................................................................. 4

D.C. Code §§ 16-4309 – 16-4312 ................................................................ 5

**Rules**

Fed. R. Civ. P. 10(c) ...................................................................................... 2

Fed. R. Civ. P. 12(b) ..................................................................................... 4

Fed. R. Civ. P. 17(a) ...................................................................................... 6

**Other Authorities**

AAA Constr. Indus. Arbitration R. 1(a) ..................................................... 12

AAA Constr. Indus. Arbitration R. 18......................................................... 10

AAA Constr. Indus. Arbitration R. 22 ....................................................................................... 10

AAA Constr. Indus. Arbitration R. 25 ....................................................................................... 10

AAA Constr. Indus. Arbitration R. 31 ....................................................................................... 10

AAA Constr. Indus. Arbitration R. 32 ....................................................................................... 10

* AAA Constr. Indus. Arbitration R. 49 ....................................................................................... 12

# I.
## INTRODUCTION

Plaintiffs Steven and Melanie Madeoy are unhappy that a panel of American Arbitration Association arbitrators awarded about $21,000 to ADC Builders, Inc. The Madeoys sued the AAA and the three arbitrators—Gregory Beckwith, Andrew H. Diem, and George C. Martin, Jr.—who presided over the arbitration (collectively, the "AAA Defendants"). The Madeoys seek $1,942,000, including $1.5 million in punitive damages. They claim to be entitled to this relief under the Federal Arbitration Act because the arbitrators reached the wrong decision. Specifically, the Madeoys allege that the arbitrators misunderstood contract law, gave insufficient weight to the testimony of an expert witness, and did not order ADC to pay for the Madeoys' experts and attorneys. Thus, this lawsuit directly challenges the decisional acts of the arbitrators, and it seeks damages from them and the AAA for those decisional acts.

These claims are patently frivolous and should be dismissed for at least three reasons. *First*, the FAA and parallel state statutes provide the exclusive remedies for challenging an arbitration award, and do not allow for claims against arbitrators or provider organizations that have absolutely no interest in the outcome of the arbitration or challenges to the arbitration award. *Second*, it is well established that arbitrators and provider organizations enjoy absolute immunity from claims related to their conduct in connection with an arbitration. *Third*, the Madeoys expressly waived any right of action against the AAA Defendants in their agreement with ADC. Each of these deficiencies is fatal to the Madeoys' claims and independently requires dismissal.

## II.
## ALLEGATIONS OF THE COMPLAINT

This lawsuit stems from the arbitration of a construction dispute between the Madeoys and ADC.  In June 2004, the Madeoys and ADC entered into an agreement (the "Contract"), whereby the Madeoys retained ADC to build a single-family home in Potomac, Maryland. Compl. at 2 & Ex. 1, Contract.[1]  The Madeoys and ADC agreed, among other things, that any dispute arising out of the Contract would "be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association . . . ."  *Id.* (quoting Compl. at Ex 1, Contract ¶ 15.8).  Such a dispute developed, and ADC filed a demand for arbitration with the AAA seeking to recover $224,957 from the Madeoys for unpaid invoices. Compl., Ex. 2, Arbitration Award at 2.  The Madeoys filed a counterclaim with the AAA seeking $2,253,570.07 in damages from ADC under various contract theories.  *Id.*  By and through their legal counsel, the Madeoys and ADC selected a three-person arbitration panel comprised of Defendants Beckwith, Diem, and Martin.

In January 2007, after considering extensive testimony and exhibits, the arbitration panel issued its award.  Compl. at 2 & n.1.  The panel awarded $224,957 to ADC; it also awarded $204,612.50 to the Madeoys based on their counterclaims.  Compl., Ex. 2, Arbitration Award at 4.  After setting off these awards and adding prejudgment interest, the panel directed the Madeoys to pay ADC a net amount of $21,260.  *Id.*

On March 20, 2007, the Madeoys, purportedly acting *pro se*, filed a document with this Court styled as a "Complaint and Motion to Vacate, Modify, or Correct Award by the American

---

[1] The exhibits attached to the Complaint are "part thereof for all purposes."  Fed. R. Civ. P. 10(c).

2

Arbitration Association" ("Complaint").  *See* Docket Entry ("DE") 1.  This version of the Complaint names only the AAA and the three individual arbitrators as defendants.  The Complaint alleges that the arbitration award should be modified for three reasons.  First, the Madeoys allege that the arbitrators misapplied contract law by rejecting one of the Madeoys' claims against ADC concerning non-timely performance.  Compl. at 4-5.  Second, the Madeoys allege that the arbitrators gave insufficient weight to the testimony of one of the Madeoys' expert witnesses.  *Id*. at 5-6.  Third, the Madeoys allege that the arbitrators erred by not ordering ADC to pay for the Madeoys' experts or legal counsel.  *Id*. at 6.  The Complaint contains no other factual allegations.  Thus, the claims are directed exclusively at challenging the decision of the arbitrators in resolving the controversy between the Madeoys and ADC.

In their prayer for relief, the Madeoys seek damages in the amount of $1,942,000.  *Id*. Elaborating on this request, the Madeoys allege that they "have incurred punitive damages arising from the arbitrator's award in the amount of $1,500,000." *Id*.  They claim that they are entitled to this relief under the Federal Arbitration Act.  *Id*. at 1-4.

On May 24, 2007, the Madeoys filed a document entitled "Amended Complaint and Motion to Vacate, Modify, or Correct Award by the American Arbitration Association."  *See* DE 7. This document pleads no allegations but apparently seeks to add ADC as a defendant in this case based on the allegations previously pleaded.[2]

---

[2] References to the "Complaint" herein are intended to refer to the allegations as purportedly amended to include ADC.  Because the amended complaint contains no allegations, however, citations to the "Complaint" refer to the document filed on March 20, 2007.

### III.
### ARGUMENT

For at least three reasons, the Court should dismiss all claims against the AAA Defendants for failure to state a claim upon which relief could be granted.  *See* Fed. R. Civ. P. 12(b)(6).[3]

**A.    The Federal Arbitration Act Provides No Cause Of Action Against The AAA Defendants**

The Madeoys purport to bring this lawsuit under Sections 10 and 12 of the FAA.  *See* Compl. at 2-3 (citing 9 U.S.C. §§ 10, 12).  These provisions provide no basis for the Madeoys' claims against the AAA Defendants.

The FAA sets forth procedures for seeking judicial review of an arbitration award.  Section 10 sets forth the grounds on which a court may vacate, modify, or correct an arbitration award.  Section 12 provides that "[n]otice of a motion to vacate, modify, or correct an [arbitration] award must be served upon the *adverse party* or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12 (emphasis added).  The FAA, by specifying that the adverse party must be notified, necessarily contemplates that the arbitrators and provider organization need *not* be notified—because they are neither necessary nor proper parties to the suit. The FAA provides no authority for courts to adjudicate issues beyond the four corners of an arbitration award, such as claims brought by the arbitrating parties against others.

---

[3] ADC has moved separately to dismiss the Complaint.  To avoid unnecessary repetition, the AAA Defendants hereby adopt and incorporate by reference all arguments made by ADC.

The FAA does *not* allow dissatisfied parties to an arbitration to sue either individual arbitrators or the organizations that sponsored the arbitration.[4]  *See, e.g., Corey v. New York Stock Exch.*, 691 F.2d 1205, 1211-12 & n.6 (6th Cir. 1982).

> Just as a litigant files an appeal, rather than suing the judge or the court of which the judge is a member, if he does not like the decisions of the trial court . . ., so a party to arbitration should sue to enforce or set aside the award, naming as adverse litigants the other parties to the original contract.

*Caudle v. Am. Arbitration Ass'n*, 230 F.3d 920, 922 (7th Cir. 2000).  Even where litigants have contested the jurisdiction of arbitrators to decide controversies, courts have held that the proper remedy is "for the wronged party to seek injunctive relief against the party initiating the arbitration[,]" as opposed to suing the arbitrator or provider organization.  *Int'l Med. Group, Inc. v. Am. Arbitration Ass'n*, 312 F.3d 833, 844 (7th Cir. 2002).  "The AAA need not be a party to that action and should be spared the burden of litigating the appropriateness of its exercise of jurisdiction."  *Id*.

The FAA and its state-law equivalents provide the exclusive remedies for challenging an arbitration award.  *See, e.g., Foster v. Turley*, 808 F.2d 38, 41-42 (10th Cir. 1986) ("The Arbitration Act provides the exclusive remedy for challenging conduct that taints an arbitration award within the Act's coverage"); *Corey*, 691 F.2d at 1211 (same).  Therefore, courts have squarely held that collateral attacks on an arbitration award, brought by suing the arbitrators or provider organization, are impermissible.  *See, e.g., id.* at 1211-12.

The absence of a cause of action against arbitrators is rooted in common sense and sound public policy.  "Like judges, arbitrators 'have no interest in the outcome of the dispute between

---

[4]  D.C.'s parallel act is also devoid of such a cause of action.  *See* D.C. Code §§ 16-4309 – 16-4312.

[the parties to the contract], and they should not be compelled to become parties to that dispute.'" *Caudle*, 230 F.3d at 922 (quoting *Tamari v. Conrad*, 552 F.2d 778, 781 (7th Cir. 1977) (alteration in original)); *see also* Fed. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the real party in interest").

Thus, while the FAA and parallel state statutes are the only means through which the Madeoys may contest the arbitration award, their attempt to extract damages from the AAA Defendants under those statutes is utterly lacking in any legal basis. Accordingly, the Madeoys' claims against the AAA Defendants should be dismissed.

## B.     The AAA Defendants Are Absolutely Immune From Suit

Courts throughout the Nation have uniformly held that arbitrators and provider organizations are entitled to absolute immunity against all claims related to their provision of dispute resolution services.[5] This arbitral immunity doctrine is an extension of the common law doctrine

---

[5] *Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 382 (8th Cir. 1996) ("Because an arbitrator's role is functionally equivalent to a judge's role, courts of appeals have uniformly extended judicial and quasi-judicial immunity to arbitrators"); *see also Int'l Med. Group, Inc. v. Am. Arbitration Ass'n*, 312 F.3d 833, 843 (7th Cir. 2002) (applying arbitral immunity to arbitrator and the AAA, noting that "suing an arbitrator [is] comparable to suing jurors when a litigant is dissatisfied with the outcome of a lawsuit"); *New England Cleaning Servs., Inc. v. Am. Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999) ("[T]he AAA's administrative acts . . . were sufficiently related to the arbitration to be protected by immunity"); *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990) ("Based primarily on the functional comparability of the arbitrator's role in a contractually agreed upon arbitration proceeding to that of his judicial counterpart, the Courts of Appeals that have addressed the issue have uniformly immunized arbitrators from civil liability for all acts performed in their arbitral capacity") (internal quotation marks omitted); *Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987) ("Because federal policy encourages arbitration and arbitrators are essential in furthering that policy, it is appropriate that immunity be extended to arbitrators for acts within the scope of their duties and within their jurisdiction"); *Corey v. New York Stock Exch., Inc.*, 691 F.2d 1205, 1208-09 (6th Cir. 1982) ("[T]he NYSE, acting through its arbitrators, is immune from civil liability for the acts of the arbitrators arising out

[Footnote continued on next page]

of absolute judicial immunity, first articulated by the Supreme Court in *Bradley v. Fisher*, 80 U.S. 335, 347 (1872). The doctrine of arbitral immunity recognizes that "an arbitrator's role is functionally equivalent to a judge's role," and that "arbitral immunity is necessary to protect decisionmakers from undue influence, and the decision-making process from attack by dissatisfied litigants." *Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 382-83 (8th Cir. 1996).

Arbitral immunity applies not only to individual arbitrators, but also to provider organizations, such as the AAA. *See, e.g., Galuska v. New York Stock Exch.*, No. 99-3522, 2000 U.S. App. LEXIS 6370, at *5-6 (7th Cir. Apr. 3, 2000) ("[C]ourts have uniformly extended arbitral immunity to organizations sponsoring arbitrations . . . .) (collecting cases); *New England Cleaning Servs., Inc. v. Am. Arbitration Ass'n*, 199 F.3d 542, 546 (1st Cir. 1999) (affirming dismissal of claims against the AAA on grounds of arbitral immunity).

> Extension of arbitral immunity to encompass boards which sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illusionary. It would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring association.

*Corey*, 691 F.2d at 1211; *see also Olson*, 85 F.3d at 383 (same). Accordingly, courts have routinely dismissed lawsuits against provider organizations, as well as their arbitrators, on grounds of absolute immunity.[6]

---

[Footnote continued from previous page]
of contractually agreed upon arbitration proceedings"); *Shrader v. Nat'l Ass'n of Sec. Dealers*, 855 F. Supp. 122, 124 (E.D.N.C. 1994) ("[A]ll of the plaintiff's claims against these defendants are preclusively barred by the defense of arbitral immunity"), *aff'd per curiam*, 54 F.3d 774 (4th Cir. 1995).

[6] *See, e.g., Honn v. Nat'l Ass'n of Sec. Dealers*, 182 F.3d 1014, 1018 (8th Cir. 1999); *Hawkins v. Nat'l Ass'n of Sec. Dealers*, 149 F.3d 330, 332 (5th Cir. 1998); *Austern*, 898 F.2d at 886.

The D.C. Circuit's decision in *Wagshal v. Foster,* 28 F.3d 1249, 1252 (D.C. Cir. 1994), requires dismissal in this case. The D.C. Superior Court referred Wagshal's case to neutral case evaluation and appointed Mark Foster as the case evaluator. *Id*. at 1251. After Wagshal questioned Foster's neutrality, Foster recused himself from the case. The court appointed another case evaluator, and the lawsuit settled thereafter. *Id*. About three months later, Wagshal sued Foster and others in this Court, claiming that Foster violated Wagshal's rights by forcing him to settle for less than he would have recovered by litigating the case. *Id*. The Court dismissed the claims against Foster, holding that Foster was entitled to absolute immunity. *Id*.

Affirming this Court's dismissal in *Wagshal*, the D.C. Circuit observed that "[c]ourts have extended absolute immunity to a wide range of persons playing a role in the judicial process." 28 F.3d at 1252. Among other examples, the court noted that such immunity has been extended to "persons performing binding arbitration." *Id*. (citing *Austern v. Chicago Bd. Options Exch.,* 898 F.2d 882, 888 (2d Cir 1990)). The court then set forth three considerations for determining when quasi-judicial immunity shields a defendant against civil liability:

> (1) whether the functions of the official in question are comparable to those of a judge; (2) whether the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect; and (3) whether the system contains safeguards which are adequate to justify dispensing with private damage suits to control unconstitutional conduct.

*Id.* Reasoning that each of these factors supported the extension of immunity to Foster, the court held that "absolute quasi-judicial immunity extends to mediators and case evaluators in the Superior Court's ADR process." *Id*. at 1253-54.

The conduct of which the Madeoys complain falls squarely within the protection of the quasi-judicial immunity recognized in *Wagshal*. Even construed in the light most favorable to the Madeoys, the allegations of the Complaint can only be understood as a fundamental assault on the discretion of the arbitrators in performing the quasi-judicial function of resolving the dis-

pute between the Madeoys and ADC.  Under these circumstances, all three prongs of the *Wagshal* test weigh forcefully in favor of extending immunity.

First, the arbitrators were clearly engaged in functions comparable to those of a judge.  As they had contractually agreed, ADC and the Madeoys enlisted the AAA's assistance in resolving their contractual dispute.  Indeed, the Madeoys themselves affirmatively invoked the AAA's adjudicative authority to hear and resolve their counterclaims against ADC.  *See* Compl. at 2.  The arbitrators heard evidence, reviewed exhibits, and ultimately issued an arbitration award deciding the outcome of the controversy.  Compl., Ex. 2, Arbitration Award.  As with mediation and neutral case evaluation, this arbitration process involved "substantial discretion, a key feature of the tasks sheltered by judicial immunity . . . ."  *Wagshal,* 28 F.2d at 1252.  Unlike the case evaluator in *Wagshal*, whose decision would not have bound the parties, *id*. at 1251, the arbitrators in this case were retained to award a binding and final ruling on litigants' claims.  *See* Compl., Ex.1, Contract at ¶ 15.8 ("The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof").  In this regard, the role of the AAA Defendants was more similar to that of a judge than the role of the case evaluator in *Wagshal*.  For all of these reasons, the "nature of the function performed by arbitrators necessitates protection analogous to that traditionally accorded to judges."  *Austern*, 898 F.2d at 886.

Second, as demonstrated by this lawsuit, arbitration is "likely to inspire efforts by disappointed litigants to recoup their losses, or at any rate harass the [quasi-judicial officer], in a second forum."  *Wagshal*, 28 F.3d at 1253.  Arbitrators and their sponsoring organizations, even more so than case evaluators, are likely to be the targets of such efforts.  As the D.C. Circuit observed, a case evaluator may deliver an unpleasant but nonbinding opinion, creating a "great

temptation to sue the messenger whose words foreshadowed the final loss." *Id*. The arbitrators here, by contrast, issued a binding determination—*i.e.*, the final loss itself—creating an increased risk of the reprisal they now face.

Third, the system clearly contains safeguards that are adequate to justify the extension of immunity to arbitrators. Arbitration is a strictly voluntary means of dispute resolution. *See, e.g., Corey*, 691 F.2d at 1210 ("Presumedly, individuals will not avail themselves of arbitration by contractual agreement if they lack confidence in the impartiality and reliability of the arbitration process"). Litigants may always opt to pursue their legal remedies through the judicial system. *See, e.g., First Options v. Kaplan*, 514 U.S. 938, 943 (1995) (noting that arbitration is a way to resolve only those disputes that the parties have agreed to submit to arbitration). Moreover, "[s]everal safeguards exist to protect the participants in the decision-making process and the integrity of the arbitration proceedings." *Corey*, 691 F.2d at 1210. Like traditional litigation, the arbitration process is adversarial. *See id*. Parties to AAA arbitration proceedings have a right, *inter alia*, to be represented by counsel, take discovery, make dispositive motions, be heard at a hearing, present evidence, request a person authorized by law to issue a subpoenas for witnesses or documents, and seek the disqualification of an arbitrator. AAA Constr. Indus. Arbitration R. 18, 22, 25, 31, 32.[7] Finally, insofar as parties to an arbitration desire judicial review of their arbitration award, they are free to pursue relief against their adversaries under the Federal Arbitration Act and equivalent state statutes, such as the version of the Uniform Arbitration Act enacted by the District of Columbia. Although these statutes do not provide remedies against arbitrators

---

[7] The Construction Industry Arbitration Rules of the American Arbitration Association are available at http://www.adr.org/sp.asp?id=22004.

themselves, they ensure that arbitrants may challenge the outcome of their arbitration proceedings in accordance with law.

In sum, the D.C. Circuit's extension of absolute immunity to case evaluators and mediators applies *a fortiori* to the AAA Defendants.  *See, e.g., Nat'l Football League Players Ass'n v. Office and Prof'l Employees Int'l Union*, 947 F. Supp. 540, 545 (D.D.C. 1996) (citing *Wagshal* for the proposition that an arbitrator would have been entitled to "the quasi-judicial immunity that applies to arbitrators and mediators," even if the plaintiff had stated a claim), *aff'd*, Nos. 96-7245, 96-7268, 1997 WL 362761 (D.C. Cir. May 6, 1997).  For this independent reason, the claims against the AAA Defendants should be dismissed.

### C.    The Madeoys' Claims Against The AAA Defendants Are Contractually Barred

The Madeoys contractually agreed not to sue the AAA Defendants, who are entitled to enforce that agreement as third-party beneficiaries to the Contract.

The Supreme Court has observed that the FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."  *Volt Info. Sci., Inc. v. Bd. of Trs*., 489 U.S. 468, 478 (1989).  The Contract's express terms require that any claims or disputes arising out if will be "decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association."  Compl., Ex. 2, Contract ¶ 15.8.  Among the rules thus incorporated into the Contract is Rule 49 of the Construction Industry Arbitration Rules.[8]  In pertinent part, Rule 49 provides that:

---

[8]  *See, e.g., C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 419 n.1 (2001) ("The American Arbitration Association Rules and the Uniform Arbitration Act . . . are not secondary interpretive aides that supplement our reading of the contract; they are prescriptions incorporated by the express terms of the agreement itself").

(b) Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary or proper party in judicial proceedings relating to the arbitration.

. . . .

(d) Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

AAA Constr. Indus. Arbitration R-49.[9]  "By agreeing to abide by these rules, the parties . . . have tacitly agreed that the AAA is not a necessary party to any litigation about the arbitration and have in advance released the AAA from any liability related to actions or omissions in connection with an arbitration."  *Int'l Med. Group, Inc. v. Am. Arbitration Ass'n*, 149 F. Supp. 2d 615, 627 (S.D. Ind. 2001), *aff'd*, 312 F.3d 833 (7th Cir. 2002).

These terms are plainly enforceable under Maryland law.[10]  "Maryland law recognizes that parties may agree to define their rights and obligations by reference to documents or Rules external to the contract."  *Wells v. Chevy Chase Bank, F.S.B.*, 832 A.2d 812, 831 (Md. 2003); *see also Cole v. Burns Int'l. Sec. Servs.*, 105 F.3d 1465, 1480 (D.C. Cir. 1997) (interpreting AAA rules incorporated by reference into the litigants' agreement); *Bryson v. Gere*, 268 F. Supp. 2d

---

[9]  The AAA, in fact, requires this release as a precondition to procuring its services.  *See* AAA Constr. Indus. Arbitration R-1(a) ("The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Construction Industry Arbitration Rules").  Thus, agreeing to waive suit against the AAA and its arbitrators was necessary to carry out the Madeoys and ADC's mutual intention to retain the AAA's services in event of a contract dispute.

[10]  The law of Maryland, the place of the construction project, governs the Contract.  Compl., Ex. 2, Contract ¶ 24.1.  Therefore, Maryland law also governs whether the AAA is a third-party beneficiary to the Contract.  *See United States ex. rel. Tenn. Valley Marble Holding Co. v. Grunley Constr.*, 433 F. Supp. 2d 104, 109 (D.D.C. 2006) (holding that a choice of law provision will be enforced unless it lacks a substantial relationship to the parties or the transaction).

46, 52 (D.D.C. 2003) ("Reference to [AAA] rules in the clause effectively incorporates those rules in their entirety into the Agreement").  Furthermore, the Maryland Court of Appeals has explained that "[r]eleases are contracts" that are "construed and applied according to the rules of contract law." *Owens-Ill., Inc. v. Cook*, 872 A.2d 969, 985 (Md. 2005).

Maryland has also long recognized the rights of third parties to enforce a "contract of which they were intended beneficiaries but to which they were not privy." *Spates v. Spates*, 296 A.2d 581, 584 (Md. 1972).  In ascertaining whether a party is an intended beneficiary, the "intention of the contract, revealed by its terms, in light of the surrounding circumstances" is determinative. *Hamilton & Spiegel, Inc. v. Bd. of Educ. of Montgomery County*, 195 A.2d 710, 711 (Md. 1963).  The terms of the Contract and the surrounding circumstances in this case evince a clear intent to confer a direct benefit on the AAA Defendants.  The Contract's terms specifically name the AAA and incorporate its rules.  Such specific identification is key factor in demonstrating that the parties intended to make the AAA a third-party beneficiary.  *See, e.g., Marlboro Shirt Co. v. Am. Dist. Tel. Co.*, 77 A.2d 776, 778 (Md. 1951) (observing that the Court of Appeals of Maryland has previously recognized the right of third-party beneficiaries in several cases where "the third person beneficiary was specifically named in the undertaking sued on").  Furthermore, although the parties edited or deleted certain provisions of the Contract by hand, the provision specifically naming the AAA and adopting its rules remained unaltered.

By agreeing not to sue the AAA and its arbitrators, the Madeoys (and ADC) reduced the AAA Defendants' civil liability and expense of defending against lawsuits brought by disappointed arbitrants, enabling the AAA to reduce the price of the arbitration services it provides.  Thus, while the release from liability is for the benefit of the AAA and its arbitrators, it is also in the best interests of the contracting litigants. *See, e.g., Davis v. Chevy Chase Fin. Ltd.*, 667 F.2d

13

160, 164-65 (D.C. Cir. 1981) ("Where parties have selected arbitration as a means of dispute resolution, they presumably have done so in recognition of the speed and inexpensiveness of the arbitral process . . . "); *Tamari*, 552 F.2d at 781 (reasoning that the availability of arbitration was in the litigants' best interests but that arbitrators "cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit").

An agreement not to sue—as the Madeoys agreed not to sue the AAA Defendants—is a proper basis for dismissing claims against a released defendant.  For example, in *Wiggins v. Hitchens*, 853 F. Supp. 505, 514 (D.D.C. 1994), a defendant agreed to cooperate with a plaintiff in the prosecution of his civil lawsuit in exchange for the plaintiff's covenant not to sue.  After the defendant cooperated as promised and testified in two depositions, the plaintiff sued him nonetheless.  *Id*.  Reasoning that the plaintiff was obligated to honor the agreement, this Court dismissed all claims against the defendant.  *Id*.  Therefore, this Court has recognized that claims against a released defendant should be dismissed.

In sum, the Madeoys entered into a binding agreement providing that the AAA Defendants are not proper parties to this lawsuit and will not be liable for damages or injunctive relief for their acts or omissions in connection with the arbitration.  The Madeoys and ADC agreed to these terms for the clear purpose of benefiting the AAA Defendants by reducing their legal liability and potential litigation costs.  Agreeing to provide this benefit made it possible for the Madeoys and ADC to procure valuable and mutually desired services at an economical price. For this reason, in addition to those explained above, the Madeoys have waived any right of action they might have otherwise had against the AAA Defendants, and the Madeoys' claims should be dismissed.  *See, e.g., Richardson v. Am. Arbitration Ass'n*, 888 F. Supp. 604, 605

(S.D.N.Y. 1995) (holding that the incorporation of the AAA's rules into a collective bargaining agreement released the AAA from liability); *Seligman v. Allstate Ins. Co.*, 756 N.Y.S.2d 403, 405 (N.Y. Sup. Ct. 2003) ("The rules precluding lawsuits against arbitration tribunals and arbitrators have been upheld by the courts of this state and other jurisdictions . . ."); *Peters Sportswear Co. v. Am. Arbitration Ass'n*, 233 A.2d 558, 560 (Pa. 1967) ("If the parties agreed that the AAA shall not be even a necessary party, then it surely cannot be a principal defendant").

## IV.
## CONCLUSION

For the foregoing reasons, the AAA Defendants respectfully submit that all claims against them should be dismissed.

Respectfully submitted,

Dated:  June 22, 2007

/s/ Mark A. Perry
MARK A. PERRY (DC Bar # 438203)
MPerry@gibsondunn.com
JASON J. MENDRO (DC Bar # 482040)
JMendro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for the AAA Defendants*

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

STEVEN MADEOY and
MELANIE MADEOY,
                    Plaintiffs,

          v.                                    Civil Action No. 1:07-cv-00606-RJL

AMERICAN ARBITRATION ASSOCIA-
TION, et al.,
                    Defendants.

**CERTIFICATE OF SERVICE**

Copies of *The AAA Defendants' Motion to Dismiss* and supporting *Statement of Points and Authorities*, as well as the AAA's *Certificate Required By Local Rule 7.1*, were filed electronically and also sent via United States Postal Service to the following parties on this 22nd day of June 2007:

          STEVEN MADEOY
          MELANIE MADEOY
          1907 Piccard Drive
          Rockville, MD  20850-6068

                              /s/ Jason J. Mendro

                              Jason J. Mendro (DC Bar # 482040)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

STEVEN MADEOY and
MELANIE MADEOY,
     Plaintiffs,

   v.        Civil Action No. 1:07-cv-00606-RJL

AMERICAN ARBITRATION ASSOCIA-
TION, et al.,
     Defendants.

**[PROPOSED] ORDER**

   Upon consideration of the AAA Defendants' Motion to Dismiss, and for the reasons stated in the memorandum opinion issued on this date, it is hereby

   **ORDERED** that the AAA Defendants' motion to dismiss is **GRANTED**; and it is further

   **ORDERED** that all claims against Defendants American Arbitration Association, Gregory Beckwith, Andrew H. Diem, and George C. Martin, Jr. are **DISMISSED**.

   ENTERED this _____ day of _____, 2007.

                  _____
                  RICHARD J. LEON
                  United States District Judge