IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN MADEOY and<br>MELANIE MADEOY,<br>              Plaintiffs,<br><br>              v.<br><br>AMERICAN ARBITRATION ASSOCIA-TION, et al.,<br>              Defendants. | Civil Action No. 1:07-cv-00606-RJL |

**REPLY MEMORANDUM IN SUPPORT OF THE
AAA DEFENDANTS' MOTION TO DISMISS**

Dated:  July 30, 2007

MARK A. PERRY (DC Bar # 438203)
MPerry@gibsondunn.com
JASON J. MENDRO (DC Bar # 482040)
JMendro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for the AAA Defendants*

# TABLE OF CONTENTS

I. ARGUMENT ....... 1

A. The Federal Arbitration Act Provides No Cause Of Action Against The AAA Defendants ....... 1

B. The AAA Defendants Are Entitled To Absolute Immunity ....... 3

C. The Claims Against The AAA Defendants Are Contractually Barred ....... 7

II. CONCLUSION ....... 9

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval*, 532 U.S. 275 (2001) .............................................................................. 2

*Arbitraje Casa De Cambio, S.A. DE C.V. v. United States Postal Serv.*, 297 F. Supp. 2d 165 (D.D.C. 2003) ............................................................................................................................ 7

*Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882 (2d Cir. 1990) .................................... 4

*Forrester v. White*, 484 U.S. 219 (1988) ....................................................................................... 4

*Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.*, 232 F.3d 383 (4th Cir. 2000) ............................................................................................................................................ 3, 5

*Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155 (10th Cir. 2007) ............. 5

*Three S. Del. v. DataQuick Info. Sys.*, Nos. 06-1227, 06-2056, 2007 WL 2004454 (4th Cir. Jul. 12, 2007) .................................................................................................................................. 5, 6

*Wagshal v. Foster,* 28 F.3d 1249 (D.C. Cir. 1994) ........................................................................ 6

**Statutes**

9 U.S.C. § 9 .................................................................................................................................... 1

9 U.S.C. § 10 .................................................................................................................................. 1

9 U.S.C. § 12 .................................................................................................................................. 1

In their opposition to the pending motion to dismiss, the Madeoys <u>concede</u> every essential element of the AAA Defendants' three principal defenses. The Madeoys <u>acknowledge</u> that the FAA provides no procedure for involving arbitrators or their sponsoring organizations in a litigant's efforts to vacate an arbitration award. They <u>agree</u> that their claims against the AAA Defendants must be dismissed to the extent that they challenge discretionary acts. And they <u>admit</u> that the Madeoys and ADC mutually agreed that they would not sue the AAA Defendants. As a result, far from providing grounds to deny the AAA Defendants' motion to dismiss, the Madeoys' most recent submission establishes that the lawsuit should be dismissed.

# I.
# ARGUMENT

**A.    The Federal Arbitration Act Provides No Cause Of Action Against The AAA Defendants**

According to their opposition, "[t]he Madeoys['] Complaint 'arises under' federal law pursuant to 9 U.S.C. § 10(a)(3), which confers jurisdiction [on] this Court and also creates a cause of action." Docket Entry ("DE") 21, Madeoys' Opposition to Defendant AAA's Fed.R.Civ.P. 12 Motion to Dismiss ("Opp.") at 2. Assuming *arguendo* that there is some basis of federal jurisdiction, the cause of action created by Section 10 of the FAA allows a "party to the arbitration" to apply for a court order "vacating the award." 9 U.S.C. § 10(a). Section 12 specifies that notice of the application "must be served upon the adverse party." 9 U.S.C. § 12.[1] The "adverse party" is the other party to the arbitration, *not* the arbitrators or the sponsoring or-

---

[1] Similarly, Section 9 provides that notice of an application for a court order confirming an arbitration award must also be served "upon the adverse party." 9 U.S.C. § 9.

ganization. Nowhere does the FAA make provision for a lawsuit against the decisionmakers, rather than the litigants themselves.

The Madeoys concede that the FAA does not authorize suits against arbitrators or sponsoring organizations, but they argue that "the FAA does not *proscribe* the notification or naming of the arbitrators and/or provider organization." Opp. at 3 (emphasis added). That is incorrect. The FAA, by *prescribing* the proper procedures to apply for an order vacating an arbitration award, has necessarily *proscribed* the use of nonstatutory procedures. The Madeoys admit that they are seeking vacatur under Section 10 of the FAA. That means they must follow the procedures in Section 12. Those procedures neither provide for nor allow the naming of arbitrators or provider organizations as parties to the court proceeding.

Insofar as the Madeoys intend to suggest that their claims arise from a statutorily-implied, private right of action, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Absent such intent, "a cause of action does not exist and courts may not create one . . . ." *Id*. at 286-87. For the reasons explained above, the FAA is devoid of any congressional intent to create a private right of action for parties to sue their arbitrators or the sponsoring organizations for damages. Indeed, the FAA does not even provide for damages lawsuits against adverse parties. It simply permits judicial review of certain arbitration awards, a procedure in which arbitrators have no stake whatsoever. *See* DE 12, AAA Defendants' Motion to Dismiss ("MTD") at 5-6.

2

B.     **The AAA Defendants Are Entitled To Absolute Immunity**

"The Madeoys do not dispute the concept of arbitral immunity nor the fact that it applies in the vast majority of cases involving challenges to an arbitration award." Opp. at 5. They contend, however, that the AAA and its arbitrators cannot invoke that well-established immunity here because the complained-of acts were "ministerial," rather than decisional. Opp. at 7-8. Putting aside that arbitral immunity also extends to acts that can be described as "ministerial" or "administrative," the Madeoys' contention is refuted by the Madeoys' Complaint, which charges that the arbitrators (1) misapplied contract law by rejecting one of the Madeoys' claims concerning non-timely performance by ADC, Compl. 4-5; (2) gave insufficient weight to the testimony of the Madeoys' expert witness, *id.* at 5-6; and (3) erred by not ordering ADC to pay for the Madeoys' experts or legal counsel, *id.* at 6. Each of these claims directly challenges the arbitrators' decisional acts, which—even in the Madeoys' view—are entitled to absolute immunity.

The Madeoys attempt to re-label those decisional acts "ministerial" by asserting that the arbitrators' duty to "enforce the terms of the contract" was "a clear, non-discretionary obligation to take a specific affirmative action, which obligation is positively commanded and 'so plainly prescribed as to be free from doubt.'" Opp. at 7 (quoting *Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.*, 232 F.3d 383, 388 (4th Cir. 2000)). The "specific affirmative action" to which the Madeoys refer (although undefined) can only mean the issuance of the arbitration award the Madeoys preferred, and the notion that performing such "action" is a "non-discretionary obligation" assumes that the arbitrators had no choice but to issue that preferred award because any other decision would be wrong. Thus, the Madeoys' argument, put simply, is that arbitral immunity does not apply because they think that the arbitrators reached the wrong

3

decision.[2] This proposition is plainly incorrect. If accepted, it would completely eviscerate the doctrine of arbitral immunity by confining its application to cases in which all of the parties to an arbitration are satisfied with its outcome.

Of course, arbitral immunity does not depend on whether the arbitrators were right or wrong—or whether a plaintiff thinks they were wrong—otherwise it would not be immunity at all. Thus, "the Courts of Appeals that have addressed the issue have uniformly immunized arbitrators from civil liability for *all acts performed in their arbitral capacity*." *Austern v. Chicago Bd. Options Exch., Inc.,* 898 F.2d 882, 886 (2d Cir. 1990) (emphasis added). Courts have held that arbitral immunity applies even in a lawsuit based on an arbitrator's "wrongful exercise of jurisdiction." *Int'l Med. Group, Inc. v. Am. Arbitration Ass'n*, 312 F.3d 833, 844 (7th Cir. 2002). Furthermore, courts have rejected any attempts by parties to apply arbitral immunity differently depending on whether the actions complained of were administrative or discretionary. "[S]emantically categorizing the challenged acts as 'ministerial' or administrative, as opposed to 'discretionary,' in large part misses the mark, since the scope of arbitral immunity is 'defined by the functions it protects and serves.'" *Austern,* 898 F.2d at 886 (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)). Here, it protects the functions of the AAA Defendants in presiding over and resolving a legal controversy. Such activity is at the core of the immunity doctrine.

---

[2] Assuming that the Madeoys are as confident in their present claims as they were in their contract claims against ADC, the Madeoys' reasoning suggests that this Court's resolution of the motion at bar is also a "ministerial" act. Therefore, an order granting dismissal would be subject to collateral attack and provide a basis for private damages claims against the Court. *Cf. Int'l Med. Group, Inc. v. Am. Arbitration Ass'n*, 312 F.3d 833, 843 (7th Cir. 2002) ("[S]uing an arbitrator [is] comparable to suing jurors when a litigant is dissatisfied with the outcome of a lawsuit").

Not surprisingly, the Madeoys cite no law that supports their outlandish classification of the arbitrators' acts as ministerial. One of their authorities, *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1159-60 (10th Cir. 2007), held that the National Association of Securities Dealers and a panel of NASD arbitrators were entitled to arbitral immunity, and it affirmed dismissal of the claims against them. In so doing, the court of appeals observed that other circuit courts "uniformly hold that arbitration forums and sponsors, like courts of law, are immune from liability for actions taking in connection with administering arbitration." *Id*. at 1159. Although plaintiff Robert Pfannestiel framed his claim against the NASD as a tort for the loss of his personal property, the circuit court reasoned that his claim was "little more than a veiled attack on the decision rendered against him by the arbitration panel . . . ." *Id*. at 1160. Thus, arbitral immunity applied.

The *Pfannenstiel* decision strongly supports the AAA Defendants' motion to dismiss. Although the Madeoys cite *Pfannenstiel* to suggest that there is a broad "ministerial" exception to the arbitral immunity doctrine, Opp. at 5, *Pfannenstiel* forcefully demonstrates that the scope of arbitral immunity is expansive. Indeed, such immunity extends even to preclude tort claims related to the loss of personal property *after* an arbitration concludes, provided that those claims can be characterized as a challenge to the arbitration decision. Of course, such a leap is not necessary in this case, where the claims overtly contest the arbitration decision and nothing more.

*International Union, United Mine Workers of America v. Marrowbone Development Co.*, 232 F.3d 383 (4th Cir. 2000), and *Three S. Delaware v. DataQuick Information Systems*, Nos. 06-1227, 06-2056, 2007 WL 2004454 (4th Cir. Jul. 12, 2007), which the Madeoys also cite, are inapposite. These cases merely address the standard for vacating an arbitration award. Neither

5

case has anything to do with claims against arbitrators or their sponsoring organizations, and neither case involves any claims for damages.[3]

The hodgepodge of cases the Madeoys cite to define "ministerial" acts as those that are "inevitable," "foreordained," and "non-discretionary," Opp. at 6, are also unavailing to the them. None of these terms can describe the conduct on which the Madeoys' claims are based. The fact that the arbitration award is in dispute dispenses with any notion that the Madeoys' preferred award was inevitable or foreordained. Furthermore, the process of presiding over an arbitration and determining an arbitration award necessarily involves considerable discretion. *See* MTD at 9. In *Wagshal*—a decision discussed at length in the AAA Defendants' motion to dismiss but conspicuously ignored in the Madeoys' brief—the D.C. Circuit concluded that a neutral case evaluator was entitled to immunity, in part, because "identifying factual and legal issues, scheduling discovery and motions with the parties, and coordinating settlement efforts . . . obviously involve[s] substantial discretion." *Wagshal v. Foster,* 28 F.3d 1249, 1252 (D.C. Cir. 1994).[4] Thus, the Madeoys' suggestion that the arbitration of their dispute with ADC was merely a "non-discretionary obligation to take a specific affirmative action" is flatly contradicted by the law of this Circuit.

---

[3] Moreover, *DataQuick* does not, as the Madeoys seem to suggest, conclude that an arbitrator committed misconduct. *DataQuick* involved a motion to vacate an arbitration award issued by an AAA arbitrator. 2007 WL 2004454, at *1. The Fourth Circuit held that the movant failed in each of its efforts to show that the arbitrator was partial, *id*. at *7, engaged in misconduct, *id*. at *8, or exceeded his power, *id*. at *9. Thus, the circuit court affirmed the district court's order denying the motion to vacate. *Id*. at *10.

[4] As explained in their motion to dismiss, the AAA Defendants exercised even greater discretion than the case evaluator in *Wagshal* because they were retained to award a binding and final ruling on the litigants' claims. *See* MTD at 9.

6

### C.     The Claims Against The AAA Defendants Are Contractually Barred

In their construction contract with ADC (the "Contract"), the Madeoys agreed to arbitrate pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association. *See* Compl. at Ex 1, Contract ¶ 15.8.  One of those rules expressly provides that the arbitrators and the AAA are not necessary or proper parties to any lawsuit concerning the award. *See* AAA Constr. Indus. Arbitration R-49.  The Madeoys concede that "[y]es, the arbitration agreement contained the Rule 49 proviso regarding liability of the arbitrators or the AAA." Opp. at 8.  Furthermore, they do not dispute that the AAA and its arbitrators are intended third-party beneficiaries of this "proviso."  Rather, they ask this Court to ignore this contractual provision because the arbitrators are newly alleged to have "breached their contract with the parties" by rendering an award with which the Madeoys disagree.

Contrary to the Madeoys' new argument, there is no contract between them and the AAA (or the individual arbitrators).  Certainly none is alleged in the complaint, and a party cannot rely on a supposed contract for the first time in opposing a motion to dismiss. *See, e.g., Arbitraje Casa De Cambio, S.A. DE C.V. v. United States Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citations omitted) (refusing to consider allegations about certain meetings and "express contracts" asserted for the first time in the plaintiffs' opposition to a motion to dismiss).  There *is* a contract between the Madeoys and ADC, but the AAA is not a party to that contract.  The AAA Defendants have contended, and the Madeoys have not seriously contested, that they are *third-party beneficiaries* of the Madeoys-ADC Contract, but such a non-party cannot be in breach.  In any event, the sole "breach" alleged by the Madeoys is the arbitrators' failure to render an award to the Madeoys' liking; that is the very conduct that *the Madeoys* contractually agreed not to bring suit on against the AAA or its arbitrators.  The Madeoys, not the AAA Defendants, are in breach of their contractual agreement.

7

The Madeoys' proposed application of the Contract is implausible because it conflicts with the plain language of the Contract and would render Rule 49 meaningless. According to the Madeoys, a litigant's agreement not to sue the AAA or its arbitrators could be disregarded simply because that litigant is dissatisfied with the outcome of the arbitration. Thus, Rule 49's waiver provision would only apply where it is absolutely unnecessary, *i.e.*, when litigants do not want to sue the AAA or its arbitrators. This dubious construction of the Contract is inconsistent with its express terms and cannot possibly represent the intent of the parties. The Contract makes clear—and the Madeoys do not deny—that the parties intended for the AAA's rules, including Rule 49, to govern their relationship in the event of a dispute. Neither logic nor the terms of the Contract support an exception that swallows that rule.

Of course, Rule 49 is designed to protect the AAA and its arbitrators precisely in cases like this one, where disgruntled litigants seek to hold the decisionmakers responsible for their losses. For this contractual reason, as well as because there is no federal cause of action against the AAA Defendants, who are in any event immune from suit for their discretionary acts, the Madeoys' lawsuit should be dismissed.

## II.
## CONCLUSION

For the foregoing reasons, and for the reasons stated in their Motion to Dismiss, the AAA Defendants respectfully submit that all claims against them should be dismissed.

                                      Respectfully submitted,

Dated:  July 30, 2007             /s/ Mark A. Perry
                                      MARK A. PERRY (DC Bar # 438203)
                                      MPerry@gibsondunn.com
                                      JASON J. MENDRO (DC Bar # 482040)
                                      JMendro@gibsondunn.com
                                      GIBSON, DUNN & CRUTCHER LLP
                                      1050 Connecticut Avenue, N.W.
                                      Washington, D.C.  20036
                                      Telephone: (202) 955-8500
                                      Facsimile: (202) 467-0539

                                      *Counsel for the AAA Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEVEN MADEOY and<br>MELANIE MADEOY,<br>                Plaintiffs,<br><br>             v.<br><br>AMERICAN ARBITRATION ASSOCIA-<br>TION, et al.,<br>                Defendants. | Civil Action No. 1:07-cv-00606-RJL |

**CERTIFICATE OF SERVICE**

       The foregoing *Reply Memorandum in Support of the AAA Defendants' Motion to Dismiss* was filed electronically, and a true and correct copy of the same was sent via United States Postal Service to the following parties on this 30th day of July 2007:

       STEVEN MADEOY
       MELANIE MADEOY
       1907 Piccard Drive
       Rockville, MD  20850-6068

                                       /s/ Jason J. Mendro

                                       Jason J. Mendro (DC Bar # 482040)