**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STEVEN MADEOY, *pro se*<br>MELANIE MADEOY, *pro se*<br>Plaintiffs,<br>v.<br><br>AMERICAN ARBITRATION<br>ASSOCIATION, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 1:07-cv-00606-RJL |

**MADEOYS' SURREPLY TO DEFENDANT AAA'S REPLY <u>MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS</u>**

COMES NOW the Plaintiffs, Steven and Melanie Madeoy, *pro se,* and submit their Surreply to Defendant AAA's Reply Memorandum in Support of Its Motion to Dismiss. The Madeoys again urge the Court to deny the Motion to Dismiss and, in support whereof, they rely upon the following:

**I. Background.**

In their Reply Memorandum in Support of the AAA Defendants' Motion to Dismiss, the Defendants state that "the Madeoys <u>concede</u> every essential element of the AAA Defendants' three principal defenses (emphasis in original)." Moreover, the AAA Defendants appear to be arguing that the reason for the Madeoys Complaint is nothing more than "sour grapes" because they are dissatisfied with the ultimate decision of the arbitrators.

These assertions could not be more erroneous and the Madeoys submit that a careful reading of their Complaint sets out factual allegations that must be taken as true and any ambiguities or doubts concerning the sufficiency of the claim must be resolved in their favor when the Court considers the AAA Defendants' Rule 12 Motion to Dismiss.

RECEIVED


AUG - 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## II. Argument.

A. The Underlying Reason for the Madeoys' Complaint Has Not Been Addressed by the AAA Defendants in Their Motion to Dismiss or Reply.

In their Motion to Dismiss and subsequent Reply, the AAA Defendants rely on three principal defenses: (1) the FAA provides no cause of action against them; (2) they are entitled to absolute immunity; and (3) the Madeoys' claims against them are contractually barred. These defenses are precisely the same ones that were raised in their initial Motion to Dismiss and were well addressed in the Madeoys' Opposition to the Motion to Dismiss. As such, they will only be responded to here insofar as some additional clarification may be required.

More importantly, the AAA Defendants fail to address the underlying issue that permits the Madeoys' claim to go forward. The facts are these: (1) when the AAA Defendants agreed to sponsor and/or arbitrate the dispute between the Madeoys and ADC, pursuant to their own rules, they agreed to view the arbitration process through the lens of the contract between the parties – which provided *inter alia* that time was of the essence; (2) the AAA defendants failed to consider the explicit terms of the contract between the parties in their conduct of the arbitration; (3) the duty of the AAA Defendants to apply the terms of the contract between the parties was a "ministerial" duty; *i.e.*, one which required no discretionary act by the AAA Defendants, who at the baseline were bound to enforce the contract's terms.

Accordingly, the AAA Defendants breached their agreement with the Madeoys and are liable for damages for their failure to perform their contractually mandated ministerial duty.

B. The *Wagshal* Case is Distinguishable From This Matter.

The AAA Defendants make much of the D.C. Circuit decision in *Wagshal v. Foster*, 28 F.3d 1249 (D.C. Cir. 1994) to support the proposition that the act of the AAA Defendants complained of here was not ministerial, but discretionary.

But the *Wagshal* decision dealt with a completely different set of circumstances. There, the issue arose from the referral of a civil suit to the alternative dispute resolution ("ADR") program pursuant to D.C. Superior Court Rule 16 of the Superior Court Rules of Civil Procedure – a non-binding form of mediation conducted by a neutral case evaluator.

As the Court knows, the Supreme Court's approach to quasi-judicial immunity has been distilled into three main factors, *all of which must be satisfied*. The third of these factors is whether the system contains safeguards which are adequate to justify dispensing with private damage suits to control unconstitutional conduct. *See, Butz v. Economou,* 438 U.S. 512 (1978). In *Wagshal,* the Court held that such safeguards were present because Wagshal could have sought the judge's recusal. But the Madeoys had no such remedy; they could hardly have sought the AAA Defendant's recusal. Moreover, it was not until *after* the arbitrators announced their decision that the Madeoys could know that the obligation to enforce the terms of the contract between the parties had not been undertaken by the arbitrators.[1]

---

[1] See, Caroline Turner English, *Mediator Immunity: Stretching The Doctrine Of Absolute Quasi-judicial Immunity: Wagshal v. Foster,* 63 Geo. Wash. L. Rev. 759 (1996) (the judicial system does not provide sufficiently adequate safeguards against unconstitutional mediator conduct as the D.C. Circuit presumes. The *Wagshal* court observed that a party objecting to the conduct of a mediator is free to request the mediator's recusal, apply to the judge for relief, or even seek the recusal of the judge. What the court fails to recognize, however, is that each of these safeguards is available

Finally, it must be noted that the Supreme Court has rejected absolute immunity for judges acting in an administrative capacity and requiring that the official claiming the immunity "bears the burden of showing that such immunity is justified for the function in question." *Antoine v. Byers & Anderson, Inc.*, 124 L.Ed. 2d 391, 113 S.Ct. 2167 (1993); *accord, Burns v. Reed*, 500 U.S. 478 (1991). In the instant case the "function in question" is the AAA Defendant's requirement to abide by the terms of the contract between the parties. This is a purely administrative act and, as such, should operate to deny absolute immunity to the AAA Defendants.

C. The Supreme Court Has Warned Against an Overreaching Application of Immunity.

Maureen A. Weston, Associate Professor at Pepperdine School of Law, confronted the now pressing issue of arbitral immunity, in pertinent part, as follows:

> Holding any individual or entity immune from its acts is contrary to the established maxim that no one is above the law.[2] The Supreme Court has urged caution even with judicial immunity, stating that "absolute immunity ... is "strong medicine, justified only when the danger of [officials being] deflect[ed from the effective performance of their

only during the mediation process. The court ignores the possibility that a party might not have the occasion to discover the mediator's transgression until after the mediation is concluded. In such a situation, there would be no opportunity to submit the mediator's misconduct to judicial review.

[2] See, Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 757 F.2d 676, 687 (5th Cir. 1985). The court noted: Our judicial system assumes that all individuals, whatever their official position, are subject to law. "No man in this country is so high that he is above the law. No officer of the law may set that law of defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it."

duties] is very great.'" *Forrester v. White,* 484 U.S. 219, 230 (1988) (quoting *Forrester v. White,* 792 F.2d 647, 660 (7th Cir. 1986) (Posner, J., dissenting)). Conferring immunity on a private actor or entity gives, at a minimum, the appearance that those under its cloak are accountable to neither the parties involved nor the public. The assumption that providing absolute immunity to private arbitrators and arbitration provider institutions is in the public interest requires reassessment. This is particularly because both arbitrators and providers are effectively unaccountable to the public and parties, yet wield substantial power to impact the disposition of legal disputes.

The intent underlying judicial and arbitral immunity is to protect the decision-making function. For acts relating to decisional authority, immunity for arbitrators is appropriate, but this immunity must be accompanied by explicit standards determining the scope of its application. Existing limits on immunity and judicial procedural standards for challenging arbitral decisions suffice to ensure a dissatisfied party is not simply attempting a retrial on the merits. See, e.g., *United States v. City of Hayward,* 36 F.3d 832, 838 (9th Cir. 1994) (refusing to extend arbitrator immunity to the city, a party-appointed arbitrator in an arbitration required by the city, where the arbitrator was deemed an "agent" of the city); *E.C. Ernst, Inc. v. Manhattan Constr. Co. of Tex.,* 551 F.2d 1026, 1033 (5th Cir. 1977) (rejecting immunity for architects serving as arbitrators when the alleged wrongdoing was the failure to render decisions, as opposed to an error in decision making); *Levine v. Wiss & Co.,* 478 A.2d 397, 401-02 (N.J. 1984) (holding that the

court-appointed accountants who evaluated the value of a business were not entitled to arbitral immunity because they were merely acting as assessors, not decision makers). There are, however, significant differences between private arbitration and public adjudication, notably the disparity in procedural safeguards, that counsel for a cautious application of immunity.

Immunity may be appropriate where an arbitral institution is sued simply as a surrogate for the arbitrator's decision-making acts. However, when arbitral providers are alleged to have violated their own internal rules, failed to fulfill their contractual obligations with the parties, or improperly performed duties with respect to the administration and oversight of the arbitral process, immunity for arbitral institutions exceeds the level of immunity the Supreme Court has recognized for judges or other public officials. The result is an unjustified abdication of contractual responsibilities to parties who relied upon the provider's promised services.

The significant differences between the public judicial system and the private world of arbitration, including the lack of due process assurances in the latter, suggest that arbitral immunity ought to be applied carefully. No other private professional exercising difficult discretionary functions or services is so immune. Particularly in the present environment where powerful companies force many consumers and employees into mandatory arbitration and the use of provider institutions, blanket immunity undermines public confidence. If it is true

that "arbitral immunity exists for the parties and the public, not for the arbitrators themselves,"[3] the public is better served by a more restrained scale of arbitral immunity. Again, a qualified standard of immunity, limited to arbitral decisional acts on the merits of the substantive dispute upon which evidence was presented, comports with the need to ensure finality of the underlying arbitral award.

Maureen A. Weston, *Reexamining Arbitral Immunity in an Age of Mandatory and Professional Arbitration*, 88 Minn. L. Rev. 449 (2004).

D. <u>The Court Must Treat the Madeoy's Factual Allegations as True</u>.

In *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955 (05/21/2007), the Supreme Court very recently endorsed the proposition that, when considering a defendants Rule 12 motion to dismiss, a complaint's factual allegations must be regarded as true

Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Neitzke v. Williams*, 490 U. S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U. S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). *See, also, Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001) (in reviewing grant of motion to dismiss, court "treat[s] the complaint's factual allegations as true").

Based upon the factual allegations made by the Madeoys, the AAA Defendants' Motion to Dismiss must be denied. Moreover, as discussed in detail

---

[3] Dennis R. Nolan & Roger I. Abrams, *Arbitral Immunity*, 11 Indus. Rel. L.J. 228, 237 (1989).

in the Madeoys' Reply to AAA Defendant's Motion to Dismiss, "a motion to dismiss for failure to state a claim upon which relief can be granted is generally viewed with disfavor and rarely granted. *See, 2A Moore's Federal Practice* § 12.08 (2d ed. 1948 & Supp. 1984); *Jane Doe v. United States Dep't. of Justice,* No. 84-5006 (D.C. Cir. 1985).

**III. Conclusion.**

The Madeoys have clearly set forth factual allegations that have not been challenged by the AAA Defendants and must be regarded as true by the Court; they have demonstrated that the AAA Defendants are not entitled to arbitral immunity by virtue of their failure to perform the baseline ministerial act required by their own agreement to act as arbitrators; and have shown that a viable basis for dismissal of their claim has not been set out by the AAA Defendants.

WHEREFORE, for the foregoing reasons, the Madeoys respectfully request that the AAA Defendants' Motion to Dismiss be denied.

Respectfully Submitted,

Steven Madeoy, *pro se*
1907 Piccard Drive
Rockville, MD 20850-6068
(301) 987-5717

Melanie Madeoy, *pro se*
1907 Piccard Drive
Rockville, MD 20850-6068
(301) 987-5717

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that copies of the foregoing Madeoys' Surreply to the Reply Memorandum in Support of the AAA' Defendants' Motion to Dismiss have been served via first class mail, this 8th day of August 2007, on Jason J. Mendro, Esquire, of Gibson, Dunn & Crutcher, LLP, 1050 Connecticut Avenue, NW, Suite 200, Washington, DC 20036 AND Gerald I. Katz, Esquire, of Katz & Stone, LLP, 8230 Leesburg Pike, Suite 600, Vienna, VA 22182.

Steven Madeoy